Medomak Bank *v.* Curtis.

PRES'T., &c. MEDOMAK BANK *versus* ELIZA A. CURTIS, *Adm'x.*

Where the plaintiff received post notes, payable at a future day and in another State, and agreed to account for the same to the defendant on his note to the plaintiff if collected; or to return them, if payment thereof should be refused; it was the duty of the plaintiff to cause the post notes to be seasonably presented for payment, when the day of payment should come, and if they were not then paid to return them to the defendant.

Where a person has deceased, and his estate has been rendered insolvent and commissioners have been appointed, all claims and demands between such estate and a creditor are subject to be set off, and the balance only should be allowed, or recovered, although there could have been no set-off if both parties had lived.

If the cashier of a bank enters into a contract in behalf of the corporation, without authority for the purpose, and the bank claims the benefit of the contract, it is thereby ratified by the corporation.

Although contracts in writing cannot be varied in their terms by parol evidence, yet it is competent for one party to show by parol, that the performance of such contract has been prevented or waived by the other party.

ASSUMPSIT upon a note given by the intestate, C. S. Curtis, to the plaintiffs, dated June 24, 1839, for $444,13, payable in seven months with interest. The estate of the intestate was rendered insolvent, and the note was laid before the commissioners by the plaintiffs, as their property. The defendant set up a claim in set-off before the commissioners arising out of an instrument signed by James R. Groton, cashier of the Bank, of which the following is a copy.

"Medomak Bank, Waldoboro', June 24, 1839. Received of C. S. Curtis six post notes, issued by the Mississippi Shipping Company at Natchez, Mi. payable at the Bank United States, Philadelphia, on Jan. 28, 1840, for four hundred and fifty dollars, which sum is to be accounted for to said Curtis on his note to the Bank at that time, if collected, or returned to him, if payment is refused.      J. R. Groton, Cashier."

The Commissioners allowed a balance to the plaintiffs of $12,33, and they gave notice, &c. according to the provisions of the statute, and brought this suit.

The evidence is reported, but no ruling or decision, or instruction of the Judge at the trial, whatever, appears in the

case. The verdict was for the defendant, and the plaintiffs filed a motion, " that the verdict be set aside for the following reasons, viz.

" 1. Because said verdict is against the evidence.

" 2. Because said verdict is against the weight of evidence.

" 3. Because the verdict is against the law.

" 4. Because the said verdict is against the instructions of the Judge."

*Ruggles* and *Bulfinch*, for the plaintiffs.

*E. & M. H. Smith*, for the defendant.

The opinion of the Court was drawn up by

WHITMAN C. J. — The motion is for a new trial, averring that the verdict returned for the defendant was against evidence, and against law, and the instruction of the Court in matter of law.

The defendant's intestate, in his lifetime, on the 20th of June, 1839, gave to the plaintiffs a note of hand for $444,13, payable in seven months then next; and, as collateral security therefor, put into the hands of the plaintiffs' cashier, J. R. Groton, certain post notes, issued by the Mississippi Shipping Company, at Natchez, payable at the Bank of the United States at Philadelphia, in January, 1840, for $450,00, and took an agreement in writing, signed by Groton as cashier, that the same amount should be accounted for at that time in payment of said intestate's note, if collected, or be returned to him, if payment should be refused.

The two agreements appear to have been separate, and independent of each other, though made at the same time. The intestate, by his note, agreed to pay the plaintiffs the sum named therein in seven months. The plaintiffs on their part, in effect, agreed that the post notes should be presented for payment, when due, and if not then paid, to return them to the intestate. Both agreements were broken. The intestate's note has never been paid; and the plaintiffs never presented the post notes for payment, as was impliedly agreed, and have

never received the amount due on them, or returned them to the intestate.

Ordinarily these breaches of contract could not at law be set off against each other. But Curtis having deceased, and his estate being represented insolvent, the plaintiffs were compelled to lay their claim before the commissioners appointed to examine and allow claims against his estate; and thereupon it became the right of the defendant to file her claim, for the breach of the plaintiffs' agreement, in set-off against their claim. *Boardman* v. *Smith*, 4 Pick. 212. And, of course, on an appeal from the decision of the commissioners to this Court, the same right in set-off continued; and whatever the damage for the breach of the plaintiffs' agreement may be, should be allowed in set-off against the demand of the plaintiffs.

The question first to be settled is, had the defendant, as administratrix, any well grounded claim to damages for breach of the plaintiffs' contract. And if any, to what amount? The plaintiffs contend, that the performance of their contract was waived by the intestate; and that the breach of it was therefore excusable; and that they are not liable for any damages for the non-performance of it. This depends upon the testimony of the cashier, Groton. His competency to testify is in the first place questioned by the defendant. It is alleged, and the fact is undoubtedly so, that he was under bonds to be faithful in the performance of his duties as cashier; and it is further alleged, that he took the note in question without the knowledge and approbation, previously obtained, of the president and directors of the bank, or any one of them; and gave the writing relied on by the defendant, without being previously authorized so to do; and that if any detriment should accrue to the bank therefrom, he will be responsible for it. This objection would seem to be overcome by the adoption of the negotiation by the plaintiffs, who prosecuted this claim before the commissioners, and still are prosecuting it in this Court; and it does not appear, that they have questioned their liability on the writing signed by their cashier, under pretence that his signing the same was not duly authorized. This subsequent

adoption of his acts, even if there was an original want of express authority for the purpose, must be regarded as a ratification of them. The defendant has, moreover, elected to examine him upon the *voir dire;* and he has unequivocally denied having any interest in the event of the suit. We think therefore that he was a competent witness for the plaintiffs.

It is next objected, that his testimony was inadmissible, inasmuch as he came to testify to facts inconsistent with the terms of the written contract. The rule that a written contract cannot be varied, contradicted, or even explained by oral testimony, is well established. But it is urged, that the writing, to which the testimony relates, is but a mere receipt, and that receipts are not within the rule. But we think the writing must be deemed something more than a mere receipt, acknowledging merely the reception of money or of chattels. After acknowledging the reception of the notes, it goes on to stipulate what shall be done in reference to them. Besides; it is not the reception of the post notes that is denied. It is the liability consequent upon their reception, which is in question. We think, therefore, that there was a contract, contained in the writing, between the parties; and that such contract is not liable to be varied by oral testimony.

But it has often been held, that it is competent to parties, who have entered into stipulations, to show, that the performance of them has been prevented or waived by the opposite parties. The case here may be considered as coming within this principle. If the intestate, by his acts, statements or entreaties, induced the plaintiffs not to present the post notes for payment, it would be quite inequitable to allow his administrator now to recover the value of them of the plaintiffs; or what would be the same thing, to have them now allowed in set-off. The case of *Boyd & al.* v. *Cleveland,* 4 Pick. 525, is very much in point for the plaintiffs here. A note in that case was indorsed to the plaintiff by the defendant. The indorsement contained an agreement, by implication, that the defendant was to be liable only upon a failure of the makers, upon due demand and notice of non-payment. The plaintiff notified

the defendant, at the time he received it, that he had no confidence in the other parties to the note; and that he should look wholly to him for payment. The defendant replied, that he should be in New York, when the note would become due, and would then take it up, if it were not paid by any other party to it. The court held this to be a waiver of the obligation to make demand on the maker, and to give notice of nonpayment. The case of *Fuller* v. *M'Donald*, administrator, 8 Greenl. 213, is to the same effect.

The testimony of Groton, if believed, and no reason appears why it should not have been, proved such a waiver, on the part of the intestate, of the obligation, on the part of the plaintiffs, to demand payment of the post notes, at the time and place appointed therefor; and the testimony of Groton is strongly corroborated by that of Moses Call; who says, among other things, tending to show that the intestate did not contemplate having a demand made of payment at Philadelphia, that "he said he did not care about the post notes being sent to Philadelphia, if he could help it, as they were the company's funds." It is difficult to perceive how a jury, in such case, could be authorized to doubt the fact of there having been a waiver, by the intestate, of the implied undertaking of the plaintiffs, to make demand of payment of the post notes at Philadelphia. Such fact being established, we can see no reason why the plaintiffs should be charged with the amount of them, or indeed of any part of them.

But, if chargeable at all, they could not have been chargeable for any amount above the actual injury sustained by the intestate by the breach of the contract. And what was the amount of that injury? It can scarcely be doubted, from Call's testimony, that the notes were never intended to be presented for payment at Philadelphia. If they were actually payable there, why should the intestate have hesitated in that way to avail himself of funds to pay the plaintiffs, and Call also? Yet if Call had been able to have obtained them from the bank, he was not to present them for payment, but was to return them to the intestate, at Natchez, where they were not worth more,

according to the testimony of the defendant's witness, Holmes, than from seventy-five to eighty per centum of their nominal amount.  Again, Call says the reason assigned by the intestate why he did not want them sent to Philadelphia, was, that they were the company's funds.  Surely then there can be very little reason, if any, why the defendant, if he can avail himself of any amount in set-off, should avail himself of more than they would have been worth to the intestate at Natchez.

Another stipulation in the plaintiffs' contract may be deserving of notice.  It is, that, if the post notes were not paid, they should be returned to the intestate.  But when?  They were in the hands of the plaintiffs as collateral security.  Were they to return them to the intestate without being paid the amount due on their note against him?  This could not have been the understanding of the parties.  The plaintiffs would, by so doing, be left without any security, other than that of an individual, whose estate has been represented insolvent.  Besides; he had deceased before either his note to the plaintiffs, or the post notes, had become payable.  And moreover, if it be assumed as a fact, that the post notes were not to be presented for payment, and we cannot see why it may not be, it would become still more absurd to suppose, that the plaintiffs were to return them without first receiving the amount due to them.

Finally, upon a careful examination and consideration of the case, we are satisfied, that the verdict was returned against evidence, and against law, and that a new trial must therefore be granted.