WHITFIELD (BAILEY v.). See Case No. 748.

## Case No. 17,572.

### WHITHED v. PILLSBURY.

[The case reported under above title in 13 N. B. R. 241, is the same as Case No. 762.]

## Case No. 17,573.

### Ex parte WHITING.

### In re DOW et al.

[2 Lowell, 472; 1 14 N. B. R. 307.]

District Court, D. Massachusetts. March 24, 1876.

PLEDGEE OF BANKRUPT — SURPLUS PROCEEDS OF SALE—APPLICATION ON ANOTHER DEBT.

Where A. was a creditor of a bankrupt for two distinct debts, and held shares of stock in

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

pledge for one of them, with a statutory power of sale existing at the date of the bankruptcy, *held*, he could apply the surplus proceeds of the shares, after paying the first debt, to the payment of the second.

[Cited in Re Thomas, Case No. 13,886; Re Voetter, 4 Fed. 634; Re McFay, 13 Fed. 444.]

[Disapproved in Brown v. New Bedford Institution for Savings, 137 Mass. 265. Cited in Ex parte Nason, 70 Me. 367.]

In bankruptcy. Petition to prove against the joint estate and the separate estate of one of the partners such debt as should remain after applying the proceeds of certain collateral security.

G. Putnam, Jr., for petitioner.
W. B. Durant, for assignee.

LOWELL, District Judge. The facts, as I understand them, are, that in 1874 the firm of Dow, Hunt, & Co., the bankrupts, of which firm A. C. Cushing was a partner, borrowed $3,000 of a savings-bank, for which they, as a firm, and Cushing and the petitioner, Whiting, individually, gave their joint and several promissory note. This note the petitioner paid to the bank in full, after the failure of Dow, Hunt, & Co., but before their bankruptcy. The parties differ in their mode of looking at this note. The petition represents it as signed by Dow, Hunt, & Co., and Cushing, as principals, and by the petitioner as surety, while the answer represents it to be the note of Dow, Hunt, & Co. as principals, and Cushing and the petitioner as co-sureties, and alleges that the money went to the firm exclusively. Upon the face of the note I should suppose that the answer puts the contract correctly, and I shall so consider the case for the purposes of the present decision, though it is a point upon which evidence outside of the note is of course admissible. In 1875, the petitioner lent $1,396 to the firm of Dow, Hunt, & Co., and Cushing transferred to him eight shares of the capital stock of the Hingham Steamboat Company as collateral security, which Whiting promised to return on payment of the $1,396 with interest. This debt was overdue and unpaid at the time of the bankruptcy. This stock is worth more than $1,396 and interest, and the assignee has offered to pay the amount of that debt upon a reconveyance of the stock. The question is, whether Mr. Whiting can hold the surplus proceeds of the shares by way of set-off against Cushing's other debt to him, for contribution as co-surety of the note above mentioned.

I have had occasion more than once to look carefully at the cases on the subject of mutual credit in bankruptcy; and while the decisions in this country agree entirely, as far as they go, with those made in England, the subject has been more fully considered in that country, as is natural, the bankrupt law having been in force there for a much greater length of time. The leading cases on the subject are Rose v. Hart, 8 Taunt. 499; Young v. Bank

of Bengal, 1 Moore, P. C. 150, much more fully reported 1 Deacon. 622; Naoroji v. Chartered Bank of India, L. R. 3 C. P. 444; Astley v. Gurney, L. R. 4 C. P. 714. All those cases should be studied.

[2] [That the courts of the United States have followed the liberal construction of the English judges of the matter of mutual credit in bankruptcy and insolvency, see American Notes to Rose v. Hart, 2 Smith, Lead. Cas. 293; McLaren v. Pennington, 1 Paige, 102; Van Wagoner v. Paterson Gaslight Co., 23 N. J. Law, 283; Aldrich v. Campbell, 70 Mass. [4 Gray] 284; Clarke v. Hawkins, 5 R. I. 219; Medomak Bank v. Curtis. 24 Me. 36; Phelps v. Rice, 51 Mass. [10 Metc.] 128; Myers v. Davis, 22 N. Y. 489; Morrow's Assignees v. Bright, 20 Mo.298]. The result of them is, that a creditor who, at the time of the bankruptcy. has in his hands goods or chattels of the bankrupt with a power of sale. or choses in action with a power of collection, may sell those goods or collect those claims, and set them off against the debt the bankrupt owes him; and this, although the power to sell or to collect were revocable by the bankrupt before his bankruptcy; or, in other words, the occurrence of bankruptcy in such cases gives a sort of lien which did not exist before. This has been the law ever since Rose v. Hart, 8 Taunt. 499. Before that decision, it was admitted even in cases where there was no power of sale. Young v. Bank of Bengal, ubi supra, adds this limitation, and this only, that if the right to sell the pledge does not arise until after the bankruptcy, then there is no set-off for the surplus; for the reason that the assignee might redeem instantly, before any such power existed, and the creditors shall not be prejudiced by any failure or neglect to redeem; or, to put it in another way, that the rights of the parties are fixed at the date of the bankruptcy.

I have not overlooked the fact that in Young v. Bank of Bengal a good deal is said about the agreement to return the surplus. In this case there is an agreement to return the shares when the debt is paid. I do not consider the case cited to stand on this ground, but on that already mentioned, that the credit did not exist at the date of the bankruptcy. See that case explained by Parke. B.. one of the judges who decided it, in Alsager v. Currie. 12 Mees. & W. 751, and by the judges in the late cases above cited. I apprehend that. when shares are conveyed in this way as collateral security, the law implies a promise to return them on the payment of the debt. and its expression cannot properly affect the case. In all the cases there has been either an express or an implied promise by the agent or other person having the property, that he would faithfully account for it and pay over its proceeds; but this does not prevent a set-off in bankruptcy. And the weight of authority is that a promise of this sort does not bar

---

[2] [From 14 N. B. R. 307.]

a set-off, either under the ordinary statutes or under the bankrupt act, unless the property has been intrusted to the agent for a particular purpose inconsistent with such an application of the surplus, so that this would be a fraud or breach of trust. See Key v. Flint, 8 Taunt. 21, and Buchanan v. Findlay, 9 Barn. & C. 738, for cases of this sort; and. for the general rule, Cornforth v. Rivett, 2 Maule & S. 510; Eland v. Karr. 1 East, 375; Atkinson v. Elliott, 7 Term R. 378: [Marks v. Barker, Case No. 9,096; Mayer v. Nias, 8 Moore, 275; Groom v. West, 8 Adol. & E. 758].[3]

In this case, the debt of $1,396 was overdue and unpaid, and by a statute of Massachusetts Mr. Whiting had a right to sell the shares after giving a certain notice. This law enters into the contract of the parties; and though there is no evidence of a power of sale conferred by Mr. Cushing (the form of the transfer was not put in evidence), yet they will be taken to have understood that there would be a power of sale in accordance with the statute. On the day of the bankruptcy, Cushing was indebted to the petitioner for one-half the note of the firm actually paid by his co-surety, the petitioner, two weeks or more before that time. This makes out a case of mutual credit upon the authorities cited and the others which have followed them: a debt due from Cushing to the petitioner, and choses in action of Cushing's, with a present power of sale in the petitioner's hands.

I understood that both parties submitted the matter to my decision, and accordingly I have decided it. It was said at the argument that the petitioner did not care to prove against Cushing's separate estate, as there could be no dividend. If so, it would not be necessary to decide the whole case now. When one partner has pledged his shares for the debt of the firm, proof may be made in full against the assets of the firm, because it is only when the proof is against the same estate which furnished the security that a sale and application of the security is required by the bankrupt law [of 1867; 14 Stat. 517]. Petition granted.