## *In re* CHARLES B. & JAMES C. McVAY, Bankrupts.

*(District Court, W. D. Pennsylvania. 1882.)*

1. **BANKRUPTCY—DISTINCT DEBT—APPROPRIATION OF SECURITIES OF BANKRUPT.**
   The bankrupts, who were bankers, procured B. to become surety on their bond to a depositor, and for B.'s indemnity gave him certain of their bills receivable. The next day they borrowed from B. marketable securities to raise money, and delivered to him securities owned by them. In both transactions B.'s assistance was gratuitous, and to aid the bankrupts in their business at a time of general financial stringency. A set-off existed against one of the bills receivable, which the bankrupts had overlooked. *Held*, that in the absence of any express restriction as to their use, B. had the right, as against the assignee in bankruptcy, to appropriate the second lot of securities to reimburse himself from loss occasioned by the set-off against the first lot.

2. **SAME—CONTEST BY ASSIGNEE.**
   If the assignee desired to contest B.'s right to make such appropriation, his proper course was to sue him, and he could not have the controversy determined collaterally and in a summary way by objecting to B.'s proof of a distinct and independent debt.

In Bankruptcy.

*Sur* issue, certified by register into court for determination, upon application to re-examine claim proved by D. W. C. Bidwell.

*S. Schoyer, Jr.*, for Bidwell.

*John M. Kennedy*, for assignee.

ACHESON, D. J. The bankrupts were bankers in the city of Pittsburgh. On September 30, 1873, they gave a bond to the commissioners of Ellsworth avenue to secure them on a deposit of $25,-668.47. Bidwell was surety on this bond, and for his indemnity the bankrupts on said date gave him certain of their bills receivable, aggregating $26,000. The next day (October 1) the bankrupts borrowed from Bidwell available securities amounting to $28,910, which they desired to use for the purpose of negotiating a loan in the east, and delivered to him local securities to the amount of $30,400. In both these transactions Bidwell acted without pecuniary consideration or recompense, and entirely from motives of friendship to the bankrupts. The bankrupts suspended payment and closed their doors on November 7, 1873, and on the first of December following filed their petition in bankruptcy. On November 28, 1873, they returned to Bidwell the securities they received from him, but left in his hands their own securities, and Bidwell continued to hold them until after the bankruptcy. On December 2, 1873, the Ellsworth avenue commissioners entered judgment on the bond against Bidwell, who paid them in discharge thereof $26,123.35. Owing to a

set-off existing against one of the bills receivable, he realized out of the securities delivered to him on September 30th, $23,923.53, only. After the appointment of the assignee in bankruptcy, Bidwell returned to him all the securities he received from the bankrupts on October 1st, except two negotiable promissory notes which he collected, paying of the proceeds to the assignee, on January 9 and and March 4, 1874, $5,790.90, and retaining $2,389.06, which he applied to make himself whole on the Ellsworth-avenue debt.

The claim proved by Bidwell is based upon a deposit account entirely separate and distinct from the transactions above stated. The proof is regular in form and correct in amount, and confessedly the debt is a just one. The only ground upon which the assignee seeks to have the proof expunged is that the securities which appertained to the transaction of October 1, 1873, retained by Bidwell, were assets belonging to the estate in bankruptcy, and that until he fully surrenders to the assignee the proceeds, he has no right to prove a debt or receive dividends.

The issue formed under general order No. 34, and certified by the register, presents for determination the following questions, viz.: (1) Has Bidwell the right to retain $2,389.04, of the securities he received in the transaction of October 1, 1873, to reimburse him for his loss on the securities he received in the transaction of September 30th? (2) Is the assignee entitled to a re-examination of the claim proved by Bidwell upon his deposit account, for the purpose of expunging the same because of his detention of said money?

1. If it be conceded that the case is not strictly one of "mutual credits," within the provisions of the bankrupt law as expounded by the cases of *Rose* v. *Hart*, 8 Taunt. 499; 2 Smith, Lead. Cas. 293; *Young* v. *Bank of Bengal*, 1 Moore, C. P. 150; and *Ex parte Whiting, In re Dow*, 14 N. B. R. 307; still I am of opinion that the creditor here, under the special circumstances, had the right to use the securities which came into his hands on October 1st, to make good the deficiency on those he received the day previous. The two transactions were not only nearly contemporaneous, but were intended to subserve a common purpose, viz., to aid the bankrupts in their business at a time of general financial stringency. In both instances Bidwell's aid was gratuitous on his part and wholly for the benefit of the bankrupts. The evidence discloses that when he signed the bond, on September 30th, the intention was to fully indemnify him, and it was then supposed the bills receivable handed him were ample for the purpose. The bankrupts seem to have overlooked the fact of the

existing set-off, and Bidwell was ignorant in respect to it. What, then, was the plain duty the bankrupts owed Bidwell? They were under the highest moral and legal obligation to furnish him additional security to protect him against the set-off. The succeeding day the bankrupts applied to him for further assistance, and he accorded it, receiving the second batch of securities. Now, while these latter securities were not then expressly made applicable to Bidwell's indemnity in the previous transaction, it is also true that they were not in terms restricted to the second transaction. There was, indeed, at the time no express agreement on the subject. In the absence of an express restriction as to their use, I think it would shock the moral sense of most men to hold that the bankrupts or their assignee could redeem the second lot of securities without indemnifying Bidwell from loss on account of the set-off which existed against the first.

2. But if I am wrong here, I am nevertheless of the opinion that the assignee has shown no good reason for expunging Bidwell's proof of claim. The proof is entirely regular, and the claim for an admitted debt, which has no sort of connection with the transactions of September 30th and October 1, 1873, or either of them. When the bankrupts, on November 28, 1873, delivered to Bidwell his securities, they left in his hands their own. He testifies it was then expressly understood he was to hold those of October 1st for his indemnity against the Ellsworth-avenue debt, and unless this was so, it is difficult to explain the conduct of the parties. Bidwell's retention of the $2,389.04 was under a claim of right openly avowed, and his application of that fund was known to the assignee as early as March 4, 1874. If the assignee desired to contest Bidwell's right to make that application, he could only do so by bringing a suit. He could not have the controversy determined collaterally and in a summary way by objecting to Bidwell's proof of a distinct and independent debt. *In re Forbes*, 5 Biss. 511; *In re Holland*, 8 N. B. R. 190, 192. Where a creditor has two disconnected claims, he may prove and receive dividends as to the one on which he has received no preference, without surrendering an illegal preference received on the other. *In re Richter*, 4 N. B. R. 221; *In re Holland, supra.*

Having reached the above conclusions, it is not necessary to consider a third question which the issue presents.

And now, September 9, 1882, the first and second questions certified by the register are determined in favor of D. W. C. Bidwell, and the application of the assignee to have said creditor's proof of claim expunged or diminished is denied.