## Gohen v. Gravelle, Appellant.

Argued April 18, 1963.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*James Fitzcharles, III,* for appellant.

*Donald W. VanArtsdalen,* with him *VanArtsdalen
& Pratt,* for appellee.

OPINION BY MR. JUSTICE COHEN, July 2, 1963:
This is an appeal from the grant of a partnership
accounting by the court below.

Frederick Gohen, plaintiff-appellee, and his broth-
er-in-law, Paul Gravelle, defendant-appellant, engaged
in a series of businesses between 1946 and 1955 which
are the subject of this accounting.   They comprised a
gasoline service station in Flourtown, Pennsylvania,
which was opened in 1946 and closed in 1950; two serv-
ice stations opened in 1950 and closed in 1951;[1] and,
a retail automobile parts shop and building in Edding-
ton, Pennsylvania.

---

[1] The leases for the service stations were taken in the names
of the individual partners.   The lease for the Flourtown station
was originally in appellant's name, but was subsequently changed
to appellee's name.   After several name changes, one of the stations
obtained in 1951 was leased in appellant's name and the other
in the name of appellee.

During the period between 1946-55, all of these facilities were operated on an informal basis and no written partnership agreement was ever entered into. Nevertheless, there was an admitted understanding between the two men that they were equal partners in these ventures.

As to these activities the lower court ordered an accounting, and this part of the order is not questioned by appellant. Appellant claims, however, that a nozzle business, hereinafter to be described, was not part of the partnership and, therefore, he has no duty to account for that particular venture. We do not agree.

Around the time the partnership was formed, appellant conceived a method for the development of a hold-open device to be used in conjunction with automatic gasoline nozzles. Appellant began experimenting with this device at the Flourtown station during regular working hours. The experiments continued, and in 1947 appellant borrowed money for the purpose of developing and promoting the device. Sales of the device began in 1947, and by 1948 nozzle conversion kits were being sold in increasingly larger numbers. After the sale of the service stations, the nozzle business was conducted from the partnership premises at Eddington until the brothers-in-law had a disagreement which resulted in the closing of the automobile parts shop. Throughout the 1946-55 period the book and bank accounts of the various endeavors—and of each partner's respective interest therein—were handled in a very loose manner. Without going into detail, it is sufficient to state that the funds and accounts of all ventures, including the nozzle activity, were co-mingled.

It is well established that a written agreement is not necessary to establish a partnership since its existence may be implied from a consideration of all the attending facts and circumstances. *Pappas v. Klutinoty,* 383 Pa. 184, 118 A. 2d 202 (1955) ; *Mattei*

*v. Masci,* 351 Pa. 93, 40 A. 2d 265 (1944). The following circumstances, inter alia, lead us to the inescapable conclusion that the court below properly determined that a partnership existed with respect to the nozzle enterprise:

(1) The fact that the financial affairs of the various operations were co-mingled. For instance, when appellant made the 1947 loan, the proceeds were deposited in a joint account of the partnership and the loan was later repaid from the joint funds of the partnership.

(2) The fact that the affairs of the nozzle activity were furthered by the use of partnership assets. As an example, the employees of the nozzle business were paid in large measure from general partnership funds and no rent was ever paid for the use of the automobile parts shop premises.

(3) The fact that appellant spent very little time at the service stations or at the automobile parts shop. From 1947 onward appellant devoted less and less time to the service station and increasingly more time to the nozzle business so that by the time the parties opened the automobile parts shop appellant was devoting virtually no time to the service station business and almost full time to the nozzle venture. It is unlikely that appellee would have continued to give all of his time and efforts to a partnership in which each of the partners had a one-half (1/2) interest unless he was under the belief that his co-partner was advancing the affairs of the partnership at the same time.

(4) The fact that appellant made positive representations to appellee and others that the nozzle business was included in the partnership. Although appellant denied these statements at trial, the lower court did not believe his testimony and, instead, accepted appellee's version of the facts. Since the chancellor's findings of fact affirmed by the court en banc were support-

ed by competent evidence, we must affirm them. *Sterrett v. Sterrett,* 401 Pa. 583, 166 A. 2d 1 (1960). Moreover, in his dealings with others appellant held the nozzle facility out to be part of the partnership. For example, the tax returns filed by the partnership from 1948-54 reported receipts from the nozzle operations as partnership income.

Against this overwhelming evidence, appellant offers the following facts to support his position that the nozzle business was not partnership property: In 1948, appellant withdrew approximately $2,000 from the partnership joint account and deposited it in a separate account entitled "C. Paul Gravelle Associates"; and, also appellant received a patent for the nozzle device in his individual name. Appellant contends that the transfer of these funds to an account bearing his name, and the registration of the patent in his name, proves that he did not intend the nozzle endeavor to be included in the partnership. We find no merit to this contention.

In regard to the patent, it should be noted that the fact that a patent is issued to only one of the parties does not preclude it from being a partnership asset. *Zanetti v. Zanetti,* 77 C.A. 2d 553, 175 P. 2d 603 (1947). As for this argument generally, the entire history of the joint ventures illustrates that the name in which title to property was held carries little evidentiary weight in ascertaining the intent of the parties to form a partnership. In this connection, the service stations—which were admittedly part of the partnership—were listed in the individual names of the brothers-in-law. In fact, the partners changed the names on the service station leases several times; and yet, there is no question that these stations were included in the partnership. We also point out that the funds in the "Associate" account were sometimes used for service station affairs—an act inconsistent with the position now taken by appellant.

Appellant also contends that appellee's claim is barred by laches. According to appellant's theory, appellee's alleged delay in bringing this action was prejudicial to appellant because the accountant who prepared the income tax returns mentioned above died prior to the commencement of this action. Appellant maintains that the testimony of the accountant would have satisfactorily explained why the income from the nozzle enterprise was included in the partnership returns. The short answer to this argument is that appellant suffered no prejudice from the allegedly unreasonable delay. Even if the income tax returns were excluded from consideration, the preponderence of the evidence would still be greatly against appellant's position.

In conclusion, it should be stated that the decisional point of this opinion is limited to a holding that the nozzle business and its assets are included in the partnership and hence subject to an accounting. At the accounting, it is for the lower court to determine the balance owing between the parties after examining and weighing all the offsetting debits and credits.

Decree affirmed at appellant's cost.