Feingold, Appellant, *v.* Davis.

Argued November 18, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

*Mitchell Jenkins,* with him *Rosenn, Jenkins & Greenwald,* for appellant.

*Joseph B. Farrell,* for appellee.

*Richard A. Kane,* for appellee.

OPINION BY MR. JUSTICE POMEROY, October 12, 1971:
The question presented by this appeal is whether the court below erred in refusing to grant a mandatory

injunction compelling appellees to execute and deliver to appellant appropriate instruments of conveyance of the business conducted by them known as "Davis Nursing Home", together with the real estate owned and used by them in connection with said "business."

The salient facts found by the chancellor, which are unchallenged, are as follows:

Appellees, William S. Davis and Charlotte Davis, are a husband and wife who in 1959, with funds derived from the sale of jointly owned real estate, purchased land in Luzerne County as tenants by the entireties with a view to establishing thereon a nursing home. A building for the purpose was constructed the same year, and thereafter operated by them under the names of "Davis Nursing Home", "Davis Convalescent Home", and "Davis Nursing and Convalescent Home".[1] Appellees maintained two bank accounts, each entitled "Davis Convalescent Home," with authority in both to withdraw monies. Charlotte Davis exercised functions of management and control of the "joint business", and ran the business, particularly when Mr. Davis was away.

In May, 1966 William S. Davis listed the nursing home with one Irving Levin, a New York real estate broker, for sale. Soon thereafter Mr. Levin procured appellant as a prospective purchaser, and a "binder agreement" was entered into, signed by appellant as purchaser, appellee William S. Davis as "Seller (Owner)", and Mr. Levin as broker. The agreement was not signed by Charlotte Davis, nor was she mentioned in it. In July Mrs. Davis, through her lawyer, advised appel-

---

[1] Under the latter title a license to operate such an institution was issued by the Department of Welfare of the Commonwealth. There is no evidence that this or any name was registered under the Conducting Business Under Fictitious Name Act, Act of May 24, 1945, P. L. 967, 54 P.S. 28.1 et seq.

lant in writing that she would not convey any interest in the nursing home. Mr. Davis tendered a return of the $1,000 hand money, which was refused. This suit for specific performance was then commenced.

The Davises filed separate answers, each of which denied the agency or authority of appellee William S. Davis to act for his wife, and under "new matter" raised the defense of the Statute of Frauds.[2] The chancellor held that the binder agreement was unenforceable under the Statute of Frauds, that the Davises were not in partnership, that William Davis had no authority in any capacity to bind his wife Charlotte to the sale of the nursing home, and entered a decree denying relief and dismissing the complaint.[3] Exceptions were dismissed by the court *en banc*, and the decree nisi was confirmed absolutely. While in our view the Davises may well have been in partnership, we nevertheless agree with the chancellor's other conclusions, and affirm the decree.

The appellant contends that the appellees were a partnership, that the transaction evidenced by the binder agreement was one of sale of the partnership business, i.e., the Davis Nursing Home, including its real and personal property, that William Davis had authority to bind his partner in this transaction by reason of

---

[2] By amended replies to the new matter, appellant alleged that the appellees were partners in the ownership and operation of the nursing home: that the real estate, although on its face an estate by the entireties, was in reality a partnership asset, and that Charlotte Davis was estopped to repudiate the transaction entered into by her partner with her knowledge and acquiescence.

[3] The decree ordered William S. Davis to pay appellant sums aggregating $1,660 in reimbursement for certain expenses incurred in the transaction "as a result of the conduct of the male defendant herein." Neither party has taken any exception to this portion of the decree.

her knowledge and acquiescence therein,[4] that her signature was therefore not necessary on the agreement, and that appellant is entitled to specific performance. The appellees, on the other hand, contend that the Davis Nursing Home was owned and operated by them as tenants by the entireties, that the wife's signature was essential in order to bind them to sell anything so owned, particularly real estate, and that no theory of estoppel may be set up to divest a wife's interest in real property so owned.

If the appellees' position be accepted as the correct interpretation of the situation, it is very clear that there is no enforceable contract. This is true not only because of the nature of estates by the entireties, *Peterson v. Chandler*, 362 Pa. 102, 66 A. 2d 284 (1949), but also because of the mandate of the Statute of Frauds, Act of March 21, 1772, 1 Sm. L. 389, as amended, 33 P.S. §1.

If the appellant's position of partnership be accepted, while the problem is somewhat more complicated, we think the result is the same. We therefore need not decide whether there was a partnership, or whether, if there was one, the binder agreement called for a sale of the partnership business, including its assets, or a sale only of the specified real estate, personal property and good will. Neither do we need consider the fact that this binder by its terms was subject to further approval by the seller, with a formal sales agreement to follow thereafter. The remaining portion of this opinion will assume that the Davises were operating the home as a partnership and that they owned the as-

---

[4] The chancellor found that beginning in May, 1966, Mrs. Davis was aware of the fact that the nursing home had been listed for sale with Mr. Levin, had read the binder agreement, had met with both Levin and appellant at her home, but never told them she would not join in a conveyance until her attorney gave such notice on July 29, 1966.

sets of the business, including the real estate, in that capacity.[5]

Under Section 10(4) of the Uniform Partnership Act, Act of March 26, 1915, P. L. 18, 59 P.S. §32 (the Partnership Act), a conveyance by one partner of real estate (and by the same token an agreement to make a conveyance) titled in the names of all the partners, passes the equitable interest of the partnership, subject, however, to an important proviso, viz., that the act is within the authority of paragraph (1) of Section 9 of the Partnership Act. Section 9(1) makes a partner an agent of the partnership *for the purpose of its business*, and makes the act of a partner "for apparently carrying on in the usual way the business of the partnership" binding on a partnership unless in fact the partner has no such authority, and the person with whom he is dealing knows he has not. The transaction here involved was manifestly not the carrying on in the usual way of the business of the partnership, but the converse; it was the sale of the business, including good will and apparently all other assets, except cash. Under paragraph (2) of the same Section 9, such a transaction is not binding on the partnership unless authorized by all partners. Similarly, paragraph (3) provides that all partners must authorize, *inter alia*, the disposition of the good will of the business or the doing of "any other act which would make it impossible to carry on the ordinary business of the partnership."

---

[5] A conveyance to husband and wife is presumed to create an estate by the entireties and not a partnership, but the presumption is rebuttable. *Madden v. Gosztonyi Savings & Trust Co.*, 331 Pa. 476, 200 Atl. 624 (1938). The existence of a partnership need not be evidenced by a written instrument, but may be inferred from the circumstances. *Gohen v. Gravelle*, 411 Pa. 520, 522, 523, 192 A. 2d 414 (1963); *Northampton Brewery Co. v. Lande*, 138 Pa. Superior Ct. 235, 10 A. 2d 583 (1939).

Appellant argues that Charlotte Davis, by her conduct, tacitly authorized her husband-partner to enter into the binder agreement, or at least that she is estopped to deny such authorization. The chancellor did not find the elements of estoppel (i.e., that appellant was misled, to his detriment, by the conduct of Mrs. Davis), but that issue aside, we think that, at least insofar as the contemplated conveyance relates to real estate, the nonsigning partner's authorization to the one purporting to act for the partnership must be in writing in order to be binding. Nothing in Section 9 of the Partnership Act dealing with the extent of a partner's agency relationship with the firm provides or suggests that the requisite authority of the partners for whom one partner is acting can be less than written authority where real estate is involved. There is no reason to suppose that the unequivocal and long-standing requirement of the Statute of Frauds that an agent to sell real estate must be authorized to do so in writing in order to charge his principal[6] is not applicable to a partnership agent, and we hold that the authority must be so evidenced. Accord, *Ellis v. Mihelis,* 32 Cal. Rptr. 415, 384 P. 2d 7 (1963). Compare *Kay v. Gitomer,* 253 Md. 76, 251 A. 2d 853 (1969) where the Statute of Frauds question was not raised or discussed. The cases cited by appellant do not deal with the sale of a business or of real estate, and are inapposite.[7] In the case

[6] Act of March 21, 1772, 1 Sm. L. 389, 33 P.S. §1. This requirement was most recently upheld by us in *Fiegelman v. Parmoff Corp.,* 435 Pa. 461, 257 A. 2d 575 (1969). See also *Willis-Winchester Co. v. Clay,* 293 Pa. 513, 143 Atl. 227 (1928) ; *Restatement 2d, Agency,* §52, comments *b, c,* and *d; Gordon v. O'Brien,* 320 Mass. 739, 71 N.E. 2d 221 (1947).

[7] *Gagnon v. Speback,* 383 Pa. 359, 118 A. 2d 744 (1955) ; *Allegany Gas Co. v. Kemp,* 316 Pa. 97, 174 Atl. 289 (1934) ; *Sterle v. Galiardi Coal & Coke Co.,* 168 Pa. Superior Ct. 254, 77 A. 2d 669 (1951).

at bar no partnership articles or any other writing evidencing the authority of William Davis was produced. His copartner and the firm were therefore not bound by the binder agreement.[8]

The decree of the Court of Common Pleas is affirmed; costs to be equally borne by appellant and appellees.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.

---

[8] We note also that Section 10 of the Partnership Act, dealing in general with the conveyance of real property of partnerships, speaks only in terms of the "execution" of conveyances, thus contemplating the signing of written instruments. So paragraph (5) of Section 10, referring to the situation where, as here, title is in the names of all the partners, provides that "a conveyance executed by *all* the partners" passes all of their rights in such property.