In re Edgar O. BUTZ, Individually and t/a The Bookmark; Helen A. Butz, Individually and as tenants by the entireties (Bankruptcy Nos. 77–46 and 77–47 consolidated with this Case), Bankrupts.

Bankruptcy No. 77–45WK.

United States Bankruptcy Court,
E. D. Pennsylvania.

Dec. 7, 1979.

**436**

John A. Wollman, West Chester, Pa., for bankrupts.

John A. Wetzel, Philadelphia, Pa., W. Robert Landis, West Chester, Pa., for Trustee.

James T. Owens, West Chester, Pa., for Dale R. Bonsall.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Claimant, Dale Bonsall, has brought this action seeking a determination that he is a "secured creditor" under Section 1 of the Bankruptcy Act, 11 U.S.C. § 1. On or about March 10, 1976, Bonsall entered into a loan agreement with the bankrupt, Edgar O. Butz, which provided for the sum of $3,000.00 to be lent to Butz at 9% interest, payable within one year. As collateral, Butz offered his home which he asserted was worth approximately $48,000.00. The written agreement, signed only by the bankrupt, Butz, further stated that the loan was obtained in "good faith" and that it was a secured loan which would be honored upon the sale or disposal of the property. The Agreement was never recorded.

The following Opinion constitutes findings of fact and conclusions of law in accordance with Rule 752, Rules of Bankruptcy Procedure.

The claimant's brief defines the sole issue before this court as whether Dale Bonsall is a secured creditor within the meaning of the Bankruptcy Act.

For the following reasons, Dale Bonsall is not secured under the Act, and is relegated to unsecured creditor status.

The Bankruptcy Act provides the definition of secured creditors in Section 1(28), 11 U.S.C. § 1,

"A secured creditor shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this Act or who owns such a debt for which some endorser, surety, or other person secondarily liable for the bankrupt has such security upon the bankrupt's assets."

The claimant maintains that since the above definition uses the term "includes" rather than the word "is", the statute permits a reasonable interpretation as to what comprises a secured creditor. It is further argued that the intention of the parties in creating such a note should control in this circumstance, although no lien was ever created of record.

It is well-settled that a creditor who presents his claim as secured and indicates his desire to avail himself of his alleged security opens himself up to a preliminary investigation as to whether or not his security interest is valid. Such an interest may be adjudged to be unsecured, where it lacks the prescribed form, is tainted with fraud, or is determined to be a preference or other voidable transfer. The creditor can proceed to prove his claim as an unsecured creditor and may amend his claim by substituting another valid security that has been given as collateral. 3 Collier on Bankruptcy § 57.20(4) (14th Edition)

In order to be considered a "secured creditor", the claimant must either hold security against the property of the bankrupt or be secured by the individual obligations of another who holds such a security. This definition, contained in Section 1(28) of the Act, restricts the popular meaning of the term and creditors may often be secured as a practical matter and yet not be secured creditors within meaning of the Act. 1 Collier, supra at § 1.28. Thus, in effect, no creditor will be secured in bankruptcy unless there is a lien held by him or accruing for his benefit on the property of the bankrupt, the lien being created by special

agreement, operation of law, statute or judicial proceedings. 1 Collier, supra at 1.28.

■ Clearly, since the claimant failed to record his security interest within six months of the making of the note, the written agreement has failed to qualify as a mortgage. 21 Pa.Stat.Ann. § 621 (Purdon). Moreover, the agreement also fails because the note, relating to property held by the entirety, has only the debtor's signature affixed and there is no evidence that his wife was a party to the agreement. It is a general rule of law that neither spouse acting independently may, during the lifetime of the other, alienate his or her share in entirety property, create or terminate any legal interest in the property or otherwise deal with the property in a manner that would prejudice the rights of the other spouse, and neither may appropriate such property for his own separate use. *Commonwealth v. Eden*, 456 Pa. 1, 317 A.2d 255 (1974); *Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966); *Sterrett v. Sterrett*, 401 Pa. 583, 166 A.2d 1 (1960); *Polka v. May*, 383 Pa. 80, 118 A.2d 154 (1955), P.L.E. Husband and Wife § 10. Further, any attempt by a husband to alienate or encumber the estate by the entireties absent the wife's joinder violates the Statute of Frauds and is unenforceable against the wife. *Salzman v. Miller*, 471 Pa. 104, 369 A.2d 1216 (1977), *Schweitzer v. Evans*, 360 Pa. 552, 63 A.2d 39 (1949).

■ Since there is no general agency arising from the marital relationship nor any presumption flowing therefrom that either spouse has authority to convey real estate held by the entireties without the other's joinder, *Schweitzer v. Evans*, supra; *Shay v. Schrink*, 335 Pa. 94, 6 A.2d 522 (1939); the absence here of the signature of the debtor's wife on the note and of a signed statement vesting authority in the husband to convey an interest in the real estate mandates the conclusion that the written agreement is unenforceable under both case law and the Statute of Frauds, as an interest in land within its purview. 33 Pa.Stat.Ann. § 1 (Purdon); *Commonwealth v. Eden*, supra; *Feingold v. Davis*, 444 Pa. 339, 282 A.2d 291 (1971).

■ The written agreement between the claimant and the bankrupt further failed to grant Dale Bonsall status as a secured creditor since there was no evidence that a lien was ever created by statutory or judicial proceedings. It is clear that had Bonsall obtained a final judgment lien antedating the filing of the debtor's petition in Bankruptcy, he would have been considered a secured creditor within the meaning of the Bankruptcy Act. *Butzel v. Webster Apartments Co. et al.*, 112 F.2d 362 (6th Cir. 1940); *Price v. Spokane Silver & Lead Co.*, 97 F.2d 237 (8th Cir. 1938), *cert. denied* 305 U.S. 626, 59 S.Ct. 88, 83 L.Ed. 401 (1938). Since there is no evidence that such a lien exists, Bonsall cannot now avail himself of secured creditor status, but is limited to filing proof of his claim as unsecured.

■ The fact that there would be no unsecured creditors prejudiced if Bonsall's security interest is upheld is irrelevant under the Bankruptcy Act. Section 70, sub. c puts the trustee in a bankruptcy proceeding in the position occupied under federal or state law by a creditor holding a lien, or one who could have obtained a lien by legal or equitable proceedings at the date of bankruptcy whether or not such creditor actually exists.

The last sentence of section 70, sub. c is effective to permit the trustee to attack deeds, mortgages, conditional sales contracts, and chattel mortgages, not filed or recorded at the time of the filing of the petition in bankruptcy as required by applicable local law for validity as against creditors. In other words, the status of the trustee under the section as a mythical creditor with a lien obtained by legal proceedings will suffice to permit him to upset an unrecorded chattel mortgage where, under applicable state law, it is inoperative as against creditors without notice until recorded; and it has not been recorded at the time of the filing of the petition in bankruptcy. 3 Remington on Bankruptcy, § 1604. *Bergin v. Waterson*, 279 F.2d 193, 196 (10th Cir. 1960)

Had the court approved the validity of the note as a mortgage, the failure of the claimant to record it within six months of its making, as required by 21 Pa.Stat.Ann. § 621 (Purdon) would have permitted the trustee to intervene and upset the unrecorded mortgage. The fact that the mortgage is invalid on its face still does not prevent the trustee from acting, as a mythical lien creditor.

■ Although the court is cognizant of the inequity which may result to the claimant who relied on the language of the agreement, it is of the opinion, after considering all of the circumstances, that the failure to record the written note with the debtor as required by Statute and to obtain a judgment lien, deprives him of his status as a secured creditor within the meaning of the Bankruptcy Act. A reasonable interpretation of § 1(28) of the Act can not permit the parties, by their intention alone, to create a security interest which fails to comply with the prescribed format as set forth by Statute or judicial proceedings. Thus, the claimant is left only to prove his claim as an unsecured creditor.

The claimant has cited *In re McVay*, 13 F. 443 (W.D.Pa.1882) and *In re Hartell*, 11 Fed.Cas.No.6,157 (B.C.Mo.1873) to support its argument that the parties' intention to create a secured claim is of paramount importance. The cited cases do not, however, stand for such a general proposition. Each involves a somewhat complicated factual situation totally dissimilar to the case at bar. Their holdings appear limited to that specific set of circumstances and as such, have no precedential value here.

The case of *In re Hartell, supra,* is worthy of mention. The court held that security for the payment of a note, by way of a deed of trust, given on the property of the *wife,* by the husband and wife jointly, is security within the meaning of the Bankruptcy Act and such claim should be allowed as a secured claim, although the wife may have died leaving heirs. The intention of the parties to create the security interest in *In re Hartell*, supra, was not contained within a "secret agreement" as it was in the case at bar, and although the heirs did not know of the existence of such an agreement, any creditor who performed a title search of the property would have uncovered the existence of the deed of trust and thus would have been put on notice as to the existence of a secured creditor. To the contrary, in the case at bar, no creditor could possibly have been aware that the petitioner had already obtained an alleged "secured" claim against the property since it was never recorded. Thus, each creditor would have acted as if no priority security interest was in existence.

Accordingly, Dale Bonsall is held to have an unsecured claim and may proceed to prove his claim as an unsecured creditor.