**In re COOPERATIVA CAFETEROS DE PUERTO RICO, Bankrupt.**

**Bankruptcy No. B–78–263 (B).**

United States Bankruptcy Court,
D. Puerto Rico.

July 22, 1982.

Ismael H. Herrero, Jr., Rio Piedras, P.R., for trustee, Pedro Vergne Roig.

Eduardo L. Buso, Dept. of Justice, San Juan, P.R., for Compañía de Desarrollo Cooperativo de Puerto Rico.

## ORDER RE CLAIM NO. 5

W. H. BECKERLEG, Bankruptcy Judge.

On Aug. 14, 1978, Compañía de Desarrollo Cooperativo de P. R. (Cooperative Development Co.), hereinafter "creditor", filed a proof of secured claim "for 3 million dollars" plus interest for "money loan as per Factor Lien for line of credit." Attached to the claim, and forming part of same were copies of:

1. A contract dated Aug. 16, 1974 between bankrupt and creditor for a rotating line of credit;

2. A demand promissory note for the same amount executed on the same date by bankrupt in favor of creditor.

3. An acclaratory contract between the same parties dated Sept. 30, 1974.

At about the same time, creditor filed a motion seeking a determination of the extent of its lien; the then debtor opposed alleging that it was necessary to make an inventory to determine the extent of the lien and that debtor was in the process of amending its schedules to dispute the claim; after notice and a hearing, by order of Aug. 29, 1978, we provisionally determined that creditor's claim was secured in the amount of $1,284,445.42 and the balance was unsecured; such provisional allowance was not the result of an inventory, but rather reflected the amount of debtor's inventory reported by debtor on its Schedule A–2 as subject to creditor's lien. In so far as we are aware, the inventory was never prepared by debtor [1].

Subsequently, debtor was adjudicated a bankrupt and a trustee was appointed. On Feb. 22, 1982, the trustee filed an objection to the claim of creditor; the objection prays that the claim be totally allowed as unsecured and denied and disallowed as secured.

After notice and various hearings, on April 12, 1982 we granted the parties 20 days to file any memorandum or statement they considered appropriate and that we would consider the matter as otherwise submitted. Creditor filed a brief memo enclosing copies of some of the documents attached to its claim, and some pre-bankruptcy correspondence sent by bankrupt to creditor reporting inventories at the end of various months of 1977. For the trustee, we have the memorandum attached to his objection of Feb. 22, 1982.

From trustee's memo we conclude that the trustee's objections to the secured status of this claim are based upon the following grounds:

(1) The coffee inventory of the estate was expressly excluded from the lien.

(2) The debtor and creditor had agreed to the establishment of certain inventory controls such as custodial and bonding services to be provided by Lawrence Warehouse Company and these controls were not implemental.

From the contract of Aug. 16, 1974, it appears (in para. 7th) that the bankrupt in guaranty of moneys received from creditor and interests thereon agreed to pledge sufficient inventory at cost to cover 125% of the balance owed; it was further agreed in said contract (and same para.) that bankrupt would utilize the custody and bond of Lawrence Warehouse Company, would monthly report its inventory to creditor, and the parties agreed to record the contract in the Factor's Lien Registry. 10 L.P.R.A. 551–558.

---

1. Inventories prepared by the trustee (less coffee) reflected the following:

| | |
|---|---|
| June 8, 1979 | $ 607,955.77 |
| March 24, 1980 | 598,769.52 |
| Sept. 25, 1981 | 211,862.32 |

By the Sept. 30, 1974 acclaratory contract, debtor and creditor agreed to amend para. 7 to exclude the coffee handled by bankrupt as part of the inventory and to eliminate the condition with respect to the use of the Lawrence Warehouse Company.

We do not see how creditor can claim a lien on the coffee inventory, and we do not believe they do; if they do, it is hereby denied.

■ However, creditor does claim a lien. Do they have a lien? No creditor is secured in bankruptcy unless there is a lien held by him or accruing to his benefit on property of the bankrupt, the lien being created by special agreement, operation of law, statute or judicial proceedings [2].

Here the creditor's lien, if any, arises under the Factor's Lien Act of Puerto Rico[3]; under this statute, one who advances funds under a loan contract may obtain a continuing general lien upon materials, goods in process, and merchandise consigned or pledged with the factor, and upon the accounts receivables or other proceedings resulting from the sale or other disposition of such property [4].

To establish such a lien, the originating document must give the name and address of the factor and the debtor, the interest of the debtor in the property, and the general character of the property or credits subject to the lien, and the period of time during which the loans or advances may be made [5]. Furthermore, the lien must be executed before a Notary and submitted for recording in the Registry, the lien being valid from the date and hour in which notice of same was presented in the Registry [6]. The lien continues in force during the life of the contract and for two years beyond this term unless otherwise agreed by the parties [7].

■ To enjoy the rights granted by the statute, the creditor must meet the requirements set up by the same statute. We do not believe this creditor has established its eligibility to the benefits of a lien created by the Factor's Lien Act, and even though the trustee has not specifically pointed out the defects, we may not shut our eyes to what others can see and understand [8].

We are provided with no evidence that the lien was recorded, but assuming it was presented, as it should have been, on or shortly after the contract was executed on Aug. 16, 1974, or the acclaratory contract on Sept. 30, 1974, the contract states no term or period of time during which loans or advances may be made; this is a mandatory requirement of a document creating a Factor's Lien under Sec. 2(c) of the Act [9]. The only term we can ascertain from the contract is Aug. 31, 1975, when the rate of interest will be renegotiated [10]. As we read the contract, the term is, at the best, but one year; if so the effect of the lien expired on Aug. 31, 1977 pursuant to Sec. 5 [11]. The present bankruptcy case was filed Aug. 14, 1978, or approximately one year later. We have been provided with no evidence that the lien was renewed or extended.

Sec. 2(c) of the Factor's Lien Act [12] requires that the document by which the lien is established must state "The general character of the property or credits subject to or that could become subject to the lien ..." The property that the bankrupt agreed to pledge ("acepta pignorar") is described solely as inventories ("inventarios"); assuming that an agreement to pledge is sufficient to constitute a factor's lien, what are *inventories?* Had the contract spoke of "all" in-

**2.** *In re Butz,* 1 B.R. 435 (Bkrtcy.Pa.1979).

**3.** Act No. 86 of June 24, 1954, 10 LPRA # 551–560.

**4.** # 2, 10 LPRA 552.

**5.** # 2, 10 LPRA 552(a), (b), and (c).

**6.** # 2, *supra.*

**7.** # 5, 10 LPRA 555.

**8.** *United States v. Butler* (1935) 297 U.S. 1, 61, 56 S.Ct. 312, 317, 80 L.Ed. 477.

**9.** 10 LPRA 552(c).

**10.** Article Primero of the contract of Aug. 16, 1974.

**11.** 10 LPRA 555.

**12.** 10 LPRA 552(c).

ventories, we would not consider it good draftsmanship, but at least it would be defineable; but the contract only defines "inventories" in terms of cost, that is their cost "never will be less than 125% of the balance pending." The debtor had inventories of coffee, vehicles, pencils, paper clips, store fixtures, merchandise, and many other things—which of those inventories are covered? We learn that coffee was not covered (coffee beans, roasted coffee, canned coffee, and/or instant coffee?), but exclusion from an undefined mass does not define the remainder any better.

The Factor's Lien Act of Puerto Rico requires a liberal interpretation in order that its purposes may be achieved [13], and so the Supreme Court of Puerto Rico has read it [14]. But a requirement to interpret liberally does not give us a license to ignore the realities of life [15]. Our initial allowance of this claim was but a provisional allowance and made upon the assumption that debtor would amend its schedules to show the true state of affairs. That debtor never amended its schedules to clarify a situation such as this should not work to the prejudice of all other creditors. Rather it should be, and is, incumbent upon a creditor whose claim has been challenged to support same. The essential requirement of a secured status have never been brought forward by creditor in the long period this claim has been before us. True, claims enjoy a prima facie presumption of correctness [16], but that is but a presumption and does not shift the burden of proof [17] the ultimate burden of establishing the validity of a claim is on the claimant [18].

There is no dispute here as to the amount of the debt, therefore, Claim # 5 of the Compania de Desarrollo Cooperativo de Puerto Rico is allowed in the amount of $1,284,445.42, but only as an unsecured claim without priority.

SO ORDERED.

13. # 10, 10 LPRA 560.

14. *Mills Factor Corporation v. Registrar*, 97 P.R.R. 369 (1969).

15. *Continental Can Co. v. U.S.*, 272 F.2d 312.

16. Bankruptcy Rule 301(b).

17. Federal Rule of Evidence 301.

18. *Matter of Palm Investments,* 2 B.R. 646 (Bkrtcy.Fla.1980).