Argued July 7, reversed and remanded September 10, petition
for rehearing denied October 19, 1971

# FIRST WESTERN MORTGAGE CO., *Appellant,*
# *v.* HOTEL GEARHART, INC., *Respondent.*

488 P2d 450

*Leo Levenson*, Portland, argued the cause and filed the briefs for appellant.

*Lawrence M. Dean*, Astoria, argued the cause for respondent. With him on the brief were Macdonald, Dean & McCallister, and Jeanyse R. Snow, Astoria.

Before O'CONNELL, Chief Justice, and MCALLISTER, HOLMAN, HOWELL and BRYSON, Justices.

HOWELL, J.

Plaintiff filed this suit seeking a dissolution of its joint venture with defendant. Defendant filed an answer and cross complaint requesting a rescission of the joint venture on the grounds of fraud or mistake. The trial court entered a decree granting rescission in favor of defendant, and plaintiff appeals.

The defendant, Hotel Gearhart, Inc., owns and operates a hotel, motel, restaurant and condominium on the Oregon coast at Gearhart. The stock is equally divided between John Osburn, the secretary and active principal, and Marshall Leathers, the president. The defendant, desiring to expand its holdings, obtained a 30-day option to purchase eight acres of ocean front property, including the Windjammer motel and restaurant, owned by Samson, Inc. Osburn borrowed $1,000, and this sum was paid to Samson, Inc., as consideration for the option. The option required an initial cash payment of $75,000 on the purchase price of $500,000.

The defendant was unable to raise the necessary money to exercise the option and attempted to interest a Seattle, Washington, corporation in forming a joint venture for the purchase and development of the Samson, Inc., property. The proposition made to defendant by the Seattle organization was unacceptable to defendant.

During the negotiations for the purchase and development of the Samson property, the defendant was represented by George Hansen, an attorney who was a social friend of Osburn and who had represented defendant in legal matters in the past. When the defendant and Hansen decided that the joint venture offer of the Seattle corporation was unacceptable, only a few days remained for defendant to exercise the option. Hansen told Osburn that plaintiff corporation might be interested in forming a joint venture with defendant for the purchase and development of the Samson property. Hansen was the president of plaintiff corporation, and the evidence is in dispute as to whether Hansen disclosed this fact to Osburn.

On May 1, 1968, the plaintiff and defendant entered into a joint venture agreement which provided that plaintiff would be responsible for financing the purchase of the Samson property and for the financing and construction of extensive condominium units on the property. The profits from the condominium complex were to be divided seventy-five per cent to plaintiff and twenty-five per cent to defendant. The defendant was to be responsible for the operation and management of the Windjammer motel and restaurant which were included in the Samson purchase. The profits therefrom were also to be divided seventy-five per cent to plaintiff and twenty-five per cent to defendant.

The option was exercised and the down payment of $75,000 was paid by plaintiff to purchase the Samson property. The contract between defendant and Samson provided that Samson would release the land to the defendant in four separate parcels as the yearly payments of $71,000 were made.

In accordance with the joint venture agreement, the defendant assumed the operation and management of the Windjammer motel and restaurant on the property purchased, and plaintiff proceeded with the financing and construction of the condominium units.

Apparently the venture was financially successful, because the 30 condominium units constructed on the first parcel of land resulted in a net profit of approximately $95,000. This sum was used as a payment on the contract with Samson. The second parcel was then released to defendant who conveyed it to plaintiff for construction of more condominiums.

Dissension between the plaintiff and defendant started shortly after completion of the condominium

units on the first parcel of land. The plaintiff charged defendant with commingling funds from the operation of the Windjammer properties with funds from defendant's separate operation of the Hotel Gearhart, and with failure to pay taxes. The defendant charged plaintiff with failing to provide a full accounting of the first condominium project and with charging improper expenses, including excessive interest, against the income from the first project.

The dissension reached a peak in the spring of 1969. At that time the golf course adjacent to the Hotel Gearhart had been sold to North Coast Development Company, who became interested in purchasing defendant's Hotel Gearhart and Surfside property, plus defendant's interest in the joint venture. Negotiations were conducted but the sale was not accomplished. In the meantime the plaintiff, acting without defendant's knowledge or consent, gave North Coast Development a contract to use the Windjammer joint venture property for convention purposes. Litigation ensued between defendant and North Coast Development.

The disagreement culminated in plaintiff's filing this suit for a dissolution of the joint venture, and in defendant's filing a countersuit for rescission. In granting the rescission, the trial court awarded plaintiff the title to the first parcel of land upon which the condominiums were built, plus all income and profit therefrom. The defendant was awarded the second parcel plus all rights to the balance of the purchase contract with Samson, Inc.

The parties are in complete agreement on one element—both want a termination of the joint venture. However, we do not believe that defendant was

entitled to a rescission on the grounds of fraud or mistake. The parties apparently agree that the basic cause of the disharmony between them was defendant's attempt to sell to North Coast Development, and plaintiff's attempt to oust defendant from the management of the Windjammer properties and turn the management over to North Coast Development.[1]

There is a serious question as to whether the defendant's pleading and proof support rescission on the grounds of fraud or mistake.[2]

[1] Defendant states in its brief:

"While the disharmony [between the parties] is not a ground for rescission, it was the disharmony which led John Osburn to begin questioning the wisdom of having entered the joint venture. * * * Osburn didn't seriously question the wisdom of having entered the contract until First Western began openly associating with North Coast Development."

[2] The defendant alleged that Hansen was president of plaintiff corporation and was also attorney for the defendant, and that defendant relied on Hansen. Osburn was induced to execute the agreement by statements of Hansen that "there would be sufficient moneys developed from the sale of condominiums to pay all expenses incurred for the holding and development of said properties; that said agent further assured the said John Osburn that the agreement was to be interpreted to provide that plaintiff would be responsible for any funds necessary in the holding and development of the properties and that defendant would be responsible only for operation, management and maintenance costs of the existing motel and restaurant. That plaintiff further assured defendant that the agreement provided for a complete accounting of its operation."

The evidence disclosed that the sale of the condominiums from the first parcel resulted in a net profit of approximately $95,000, and this sum was used to purchase the second parcel from Samson, Inc.

The joint venture agreement, which both parties admit is unusually brief, clearly provides that plaintiff "shall be responsible for arranging the following: Financing, planning, site development, construction, engineering, legal and selling expenses on all condominium units."

The agreement clearly provided that defendant "shall be responsible for the operation, management and maintenance of the existing motel and restaurant now on the property. After all costs

■ However, the plaintiff argues, and we agree, that the evidence establishes that defendant's failure to act promptly to rescind the joint venture agreement constituted an affirmance of the agreement.

■ The law is well established that a party seeking rescission of a contract must act promptly to disaffirm the contract.

> "He cannot retain the fruits of the contract awaiting future development to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract." Scott v. Walton, 32 Or 460, 464, 52 P 180 (1898). *Accord* Karn v. Pidcock, 225 Or 406, 357 P2d 509 (1961).

The defendant took no action to disaffirm the contract until after plaintiff filed this suit for dissolution of the joint venture. In the meantime the defendant continued to operate the Windjammer properties, saw the condominium being built by plaintiff, received title from Samson, Inc., to the second parcel of land, conveyed it to plaintiff, and even conducted negotiations to sell its interest in the joint venture to North Coast Development.

A fair analysis of the record in this case indicates that the real reason defendant seeks a termination of the joint venture is the dissatisfaction that developed between the parties because of their individual

---

and expenses, profits are to be apportioned on a basis ¾ to Western and ¼ to Hotel."

The agreement did provide for an accounting. It stated: "That the parties shall have a statement and settlement of accounts on the 10th day of April of each year."

negotiations with North Coast Development, and not fraud, as charged by defendant.

■ The plaintiff was entitled to a decree of dissolution. Although the parties were engaged in a joint venture, the law applicable to partnerships applies to joint ventures. *Wheatley v. Carl Halvorson, Inc.*, 213 Or 228, 244, 323 P2d 49 (1958). Under ORS 68.540, on application of a partner the court *shall* decree a dissolution for various reasons, including circumstances which render a dissolution equitable. In the instant case the parties had the right to dissolve the partnership by the express will of either party as the partnership had no definite term. ORS 68.530. However, this does not preclude a partner from bringing a suit for dissolution by judicial decree. 68 CJS 855, Partnership § 349(a). In such event, a court of equity may decree a dissolution because of any circumstances which render such dissolution just and equitable or where the interests of the partners will be best served by a dissolution. 68 CJS 855, 856, Partnership § 349 (b)(1). While a court of equity will not decree dissolution because of trifling disputes among the partners, dissolution will be granted where the dissensions are so serious and persistent as to make continuance impracticable, or where all confidence and cooperation between the parties have been destroyed. 68 CJS 858, Partnership § 349(b)(4).

■ In the instant case the trial court refused dissolution on the ground that the disputes were trifling. We disagree. The evidence definitely establishes that serious disharmony exists between the parties. This fact is not disputed, and both parties want a termination of their joint venture.

The cause is reversed and remanded with direc-

tions to enter a decree granting a dissolution of the May 1, 1968, agreement, a winding up of the joint venture, and directing an accounting.