Argued and submitted December 1, 1980,
reversed and remanded to trial court April 7,
petition for rehearing denied May 19, 1981

STONE-FOX, INC.,
*Appellant-Respondent,*

*v.*

VANDEHEY DEVELOPMENT CO. et al,
*Respondents-Petitioners.*

(No. 39-004, CA 14608, SC 27140)

626 P2d 1365

Thomas A. Huffman, Hillsboro, argued the cause for petitioners. With him on the briefs were Andrew M. Rich, and Huffman and Zenger, Hillsboro.

James N. Westwood, Portland, argued the cause for respondent. With him on the briefs were Richard A. Edwards, and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Campbell, Justices.

TONGUE, J.

## TONGUE, J.

This is a suit for specific performance of an earnest money agreement to sell a tract of land. Plaintiff contends that Vernon Vandehey and Jack Leonard were partners for the purpose of the development and sale of that tract of land and that, as such, the act of Mr. Vandehey in signing that agreement was binding upon Mr. Leonard even though he did not sign the agreement.

The trial court held for the defendants based upon findings (1) that the evidence was insufficient to establish a partnership; (2) that an oral statement by Mr. Vandehey that he had authority to sell the property was insufficient to transfer the interest of Mr. Leonard in that to do so would violate the statute of frauds and, in any event, (3) that the earnest money agreement was not intended to be a final agreement.

Plaintiff appealed to the Court of Appeals, contending that the trial court was in error in each of these three findings. The Court of Appeals reversed the trial court, holding that there was a joint venture between Mr. Vandehey and Mr. Leonard for development and sale of the tract, and that "once a partnership or joint venture is established, agency need not be proved to show that one partner or venturer was authorized to act for another." 46 Or App 465, 470, 611 P2d 1195 (1980).

We allowed defendants' petition for review because of our concern whether one party to a joint venture has the power to convey real property held in a tenancy in common with another joint venturer and whether partnership law was intended to govern joint ventures in this respect.

### THE FACTS

The property in dispute in this case is a 46 lot parcel in Washington County known as Family Acres. Late in 1977 Mr. Vandehey obtained a bank loan to finance development of the lots in Family Acres as homesites. In seeking the loan he informed the bank that Mr. Leonard would have an interest in the property and that Family Acres would be a joint venture between the two of them. The bank then required Mr. Leonard's guarantee on the loan, although the title to the property was then held in the

name of Mr. Vandehey. Six months later, Mr. Vandehey deeded Family Acres to "Vernon L. Vandehey and Jack Leonard" as joint tenants.

On August 23, 1978, Mr. Vandehey called the office of Mr. Stone, president of plaintiff corporation, to inquire whether he was interested in purchasing the subdivision. Mr. Stone expressed an interest and invited Mr. Vandehey to meet him the next day to discuss the transaction. On August 24 Mr. Vandehey went to the office of Mr. Stone to discuss a possible sale of the property.

The parties disagree as to what exactly was said during the ensuing discussion. According to Mr. Stone, however, Mr. Vandehey said that he had a "partner" in the transaction named Mr. Leonard, and that when Mr. Stone then offered to pay $15,000 per lot for the tract Mr. Vandehey said that his authority was limited to making a sale for $15,500 per lot and that "he would have to discuss" the offer of $15,000 per lot "with his partner, Mr. Leonard."

Mr. Stone testified further that Mr. Vandehey called him the next morning and said that he had discussed the matter with Mr. Leonard, that they had agreed to sell the property at the price of $15,250 per lot, and that Mr. Stone then accepted that counter-offer.

Mr. Vandehey then signed on behalf of defendant Vandehey Development Company (VDC) an earnest money agreement for sale of Family Acres to Stone-Fox Inc., the plaintiff. Four days later, Mr. Vandehey conveyed his undivided interest in Family Acres to VDC, a corporation owned entirely by Vandehey.[1] Mr. Leonard did not sign either the earnest money agreement or its addendum and those documents were not executed by Mr. Vandehey in the name of a partnership or joint venture. There was neither a written agreement between either Mr. Vandehey or VDC and Mr. Leonard governing their relationship, nor a written authorization by Mr. Leonard for Mr. Vandehey or VDC to sell the property.

---

[1] VDC is 100 percent owned by Mr. Vandehey, who is its president and sole director. There is no vice president or treasurer and Mr. Vandehey's attorney is the secretary. At trial Vandehey acknowledged that he and VDC were "in fact one and the same."

On September 14, 1978, an attorney acting on behalf of Mr. Leonard returned the earnest money to Mr. Stone for the stated reason that at the time the earnest money agreement was signed VDC had no interest in the property.[2] On September 20, 1978, defendants executed an earnest money agreement for the sale of Family Acres to a third party. The record does not reveal whether that sale was consummated. This lawsuit was filed on October 2, 1978.

1. *The relationship between defendants was that of joint-venturers or partners.*

■        ORS 68.110 defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." A partnership for a single transaction is a joint venture. *Hayes v. Killinger,* 235 Or 465, 470, 385 P2d 747 (1963). In *Hayes, supra,* this court held that "[t]he essential test in determining the existence of a partnership is whether the parties intended to establish such a relation"; that "in the absence of an express agreement * * * the status may be inferred from the conduct of the parties in relation to themselves and to third parties," and "when faced with intricate transactions that arise, this court looks mainly to the right of a party to share in the profits, his liability to share losses, and the right to exert some control over the business."

■        Defendants acknowledge that they shared in profits and losses and that each shared the right of control in the Family Acres project. They contend, however, that these factors also describe a joint tenancy, or tenancy in common, which alone is insufficient to establish a partnership; that they are, therefore, not partners or joint venturers, and that as co-tenants the act of one cannot bind the other.

It is true, as expressly provided by ORS 68.120(2) that a joint tenancy or tenancy in common "does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property."

---

[2] On appeal defendants do not contend that the earnest money agreement is unenforceable for that reason. As stated at note 1, supra, Vandehey admitted at trial that he and VDC were "in fact one and the same."

However, a joint tenancy or tenancy in common has some of the characteristics of a partnership, such as sharing equally in profits and liabilities (ORS 105.820, ORS 105.080), and having a right to equal control of the property. *(Bolton v. Schimming,* 226 Or 330, 360 P2d 540 (1961); *Shea v. Peters,* 126 Or 76, 268 P 989 (1928)). The existence of a joint tenancy or tenancy in common does not, however, preclude a partnership or joint venture from existing, as defendants seem to contend.

■     In this case defendants were clearly more than co-owners of land. They were engaged in a business venture for the development of a subdivision. That business venture required construction of curbs, grading of roads and installation of gas, electricity, sewer and water lines. The extensive development of property in such a manner, together with the intent to exert joint control and to share in the profits or losses, is sufficient to establish a partnership or joint venture. A. Bromberg and J. Crane, Law of Partnership 61 (1968). In addition, Mr. Vandehey told the banker that he and Mr. Leonard were engaged in a joint venture. In our opinion, the Court of Appeals was correct in holding that the relationship between defendants was more than one of joint tenancy or tenancy in common, but was either a partnership or joint venture.

It would further appear that the relationship of the defendants was that of a joint venture rather than a partnership. As stated in *Hayes v. Killinger, supra,* at 470:

> "The principal difference between a joint adventure and a partnership is that a partnership is ordinarily formed for the transaction of general business of a particular kind while a joint adventure is usually limited to a single transaction." *Hayes, supra,* at 470.

Although defendants had engaged in some similar transactions before involving development and selling of real property, there is no substantial evidence that they had formed a partnership for the general purpose of carrying on such an enterprise. Instead, it appears that defendants joined together on isolated occasions, such as this, in enterprises of a more limited nature for the development and sale of tracts of land.

Having held, for these reasons, that the relationship between Mr. Vandehey and Mr. Leonard for the purpose of developing this tract of land was that of a joint venture, rather than a partnership, we must next consider whether the act of Mr. Vandehey in entering into an earnest money agreement for the sale of that real property was binding upon the joint venture, including Mr. Leonard as a member of that joint venture, without express written authority from Mr. Leonard.

2. *Mr. Vandehey did not have authority to bind the joint venture under the facts of this case.*

■　Partners are agents of the partnership, and the acts of a partner within the scope of the partnership business are ordinarily binding upon the partnership, with some exceptions. ORS 68.210(1). It is contended by defendants, however, that a distinction exists between a joint venture and a partnership in cases involving the authority of a member of a joint venture to sell the real property which is the subject of the joint venture, and that in such cases the rules of agency governing partnerships should not apply to joint ventures.

■　This court has consistently held that partnership law controls joint ventures. *See, e.g., First Western Mtg. v. Hotel Gearhart,* 260 Or 196, 203, 488 P2d 450 (1971); *Wheatley v. Carl Halvorson, Inc.,* 213 Or 228, 235, 323 P2d 49 (1958). In recognizing this principle, we have applied various provisions of the Uniform Partnership Act (ORS Chapter 68) to joint ventures. *See Gearhart, supra,* (ORS 68.530-.540, regarding dissolution of a partnership, applied to dissolution of a joint venture); *Starr v. International Realty Limited,* 271 Or 396, 403, 533 P2d 165 (1975) (ORS 68.340(1), making partners accountable as fiduciaries applies also to joint ventures).

■ ■　We have not yet, however, had occasion to consider the application of ORS 68.210, regarding the agency authority of partners, to joint ventures. Applying that statute to joint ventures would seem to follow, however, from our previous cases in which we have held that partnership law governs joint ventures. Although it has been said that the

decisions by other courts are divided on this question,[3] we find that other courts which have addressed this question, at least in recent years, confirm this conclusion by holding that joint venturers are agents of each other and that the act of a joint venturer within the scope of the venture is binding on the joint venture. *See, e.g., Stone v. First Wyoming Bank,* 625 F2d 332 (9th Cir 1980); *Ingals Iron Works Co. v. Fehlhaber Corp.,* 327 F Supp 272 (D.C.N.Y. 1971); *Muccilli v. Huffs B,* 12 Ariz App 584, 473 P2d 786 (1970); *Gluskin v. Atlantic Savings and Loan Ass'n,* 32 Cal App 3d 307, 108 Cal Rptr 318 (1973); *Bachewiez v. American National Bank & Trust Co. of Chicago,* 75 Ill App 3d 232, 393 NE 652 (1979); *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 596 P2d 816 (Kan 1979); *Murphy v. Redland,* 583 P2d 1049 (Mont 1978); *Tansil v. Hurlock,* 204 So 2d 457 (Miss 1967); *Nager Electric Co. v. Office of General Services,* 56 Misc 2d 975, 290 NYS 2d 943 (1967); *James W. Thomas Const. Co., Inc. v. City of Madison,* 79 Wis 2d 345, 255 NW2d 551 (1977); *MJB Investments v. Coxwel,* 611 P2d 438 (Wyo 1980).

On the more specific issue of whether a joint venturer can bind the venture in a transaction involving the sale of real property, the authorities are more limited. Such authority as is available, however, follows the general rule, stating that the act of a joint venturer in such a transaction is binding on the joint venture if the transaction was within the scope of the venture. *See Tansil, supra; Dayvault v. Baruch Oil Corp.,* 211 F2d 335, 340 (10th Cir 1954); *Taylor v. Brindley,* 164 F2d 235, 241 (10th Cir 1947); *Dobbins v. Texas Co.,* 136 Okl 40, 275 P 643 (1929); *Crane, supra* at 289; 46 Am Jur 2d, Joint Ventures § 60. *Reaves v. Hembree,* 330 So 2d 747, 749 (Fl App 1976), relied on by defendants for the proposition that one joint venturer cannot bind the venture in the sale of real property, is not in

---

[3] See Jaeger, *Partnership or Joint Venture?,* 37 Notre Dame Law 138, 153 (1961). It should be noted that the only two jurisdictions (California and New York) cited by Professor Jaeger for the proposition that joint venturers are not agents of one another have recent decisions stating that venturers are agents of one another and the acts of a joint venturer within the scope of the venture are binding on the venture. *See Gluskin v. Atlantic Savings and Loan Ass'n,* 32 Cal App 3d 307, 108 Cal Rptr 318 (1973); *Smalley v. Baker,* 262 Cal App 2d 824, 69 Cal Rptr 521 (1968); *Nager Electric Co. v. Office of General Services,* 56 Misc 2d 975, 290 NYS 2d 943 (1967).

point because that case involved a sale of real property which was clearly outside the scope of the joint venture.

In light of the well-established rule in this state that the law of partnership governs joint ventures, including provisions of the Oregon Uniform Partnership Law relating to partnerships, as well as what appears to be the consistent recent authority from other jurisdictions applying that rule in cases involving the authority of one member of a joint venture to bind the joint venture and its other members, it follows that joint venturers are agents of each other in transactions within the scope of the joint venture in the same sense that partners are agents of each other in transactions within the scope of a partnership, even when the transaction in question involves the sale of real property. It must therefore be determined whether the act of Vandehey in entering into an earnest money agreement for the sale of Family Acres was within the scope of his agency authority as provided by Oregon partnership law.

Defendants contend that because the Oregon statute of frauds provides that an agent cannot transfer real property unless his authority is in writing,[4] and because there was no writing as evidence of Mr. Vandehey's authority to sell the property, it follows that the earnest money agreement signed by him, but not signed by Mr. Leonard, is void. Plaintiff contends, however, that there are specific provisions in the Oregon Uniform Partnership Law which empower a partner and, therefore, a joint venturer, to bind the partnership or joint venture in the sale of real property without written authority. We must therefore examine these competing statutory provisions.

The Oregon Uniform Partnership Law, in addition to its provision to the effect that a partner is the agent of

---

[4] ORS 41.580(6) provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged or by his lawfully authorized agent * * *.

"* * * * *

"(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing."

the partnership as to partnership business, with some exceptions (ORS 68.210), includes a specific provision relating to the conveyance of partnership real property (ORS 68.220). ORS 68.220(1) provides that:

"Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name; * * *."

When, however, as in this case, title to the real property is not in the partnership name, but is in the name of one or more of the partners or joint venturers, conveyances of such property are subject to the provisions of ORS 68.220(4) and ORS 68.210(1). ORS 68.220(4) provides as follows:

"Where the title to real property is in the name of one or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, *provided the act is one within the authority of the partner under the provisions of subsection (1)* of ORS 68.210." (Emphasis added)

It is to be noted that ORS 68.220(4) includes no requirement that the authority of the partner to convey such property be in writing. Instead, it appears to require only that the partner be acting within the authority of a partner as provided in ORS 68.210(1).[5] ORS 68.210(1) provides as follows:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, *unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowl-*

---

[5] ORS 68.220(4) also requires that the conveyance be "executed by a partner in the partnership name or in his own name. * * *" In this case the conveyance was made in the name of Vandehey Development Co. and not Vernon Vandehey. As noted at footnotes 1 and 2 of this opinion, however, Vandehey and VDC are one and the same, and defendants have not contended that there is any difference between the two. Nor do defendants raise any contention that ORS 68.220(4) does not apply because VDC signed the earnest money agreement instead of Vandehey himself. They contend only that ORS 68.220(4) is not applicable because the requirements of ORS 68.210(1) are not met. It would therefore appear that the requirements of ORS 68.220(4) were met by a conveyance in the name of Vandehey Development Co.

edge of the fact that he has no such authority." (Emphasis added)

Subsection (2) of ORS 68.210 goes on to provide that an act of a partner not within the usual course of business is binding only if authorized by the other partners. Subsection (3) lists certain acts of partners which are not binding unless expressly authorized by the other partners.

These provisions of ORS 68.210 appear to distinguish between acts of a partner which bind the partnership because of his status as a partner and acts of a partner which are binding upon it only after express authority is given by the other partners.[6] Under the provisions of ORS 68.210(1) all acts of a partner "for apparently carrying on in the usual way the business of the partnership" (i.e., which are "apparently" within the usual course of the partnership business) bind the partnership and the other partners. The effect of this provision would appear to be that the status of a partner, without more, serves as complete authority to bind the partnership with respect to acts within the apparent scope of the partnership business, obviating the necessity of any express authority, either written or oral, from the other partners. For the same reasons, it would appear to follow that the act of a partner in selling real property when in the apparent scope of the partnership business is binding upon the partnership and the other partners without obtaining their written consent, notwithstanding the provisions of the statute of frauds, ORS 41.580(6), requiring the authority of an agent to sell real property to be in writing. Conversely, it would appear that when a partner cannot act except by express authority from the other partners by reason of the provisions of ORS 68.210 and 68.220, then the authority of such a partner is substantially the same as that of any other agent of the partnership in the sense that he must have express authority to act, with the result that when a partner undertakes to

---

[6] Defendant contends that for a partner or joint venturer's acts to be binding upon the partnership or joint venture, the partner or venturer's authority to act must be established under rules of agency and, in particular, Section 161 of the Restatement of Agency, which provides:

"A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other party reasonably

sell real property in such a situation his authority to do so must be in writing because of ORS 41.580(6).

Such an analysis would appear to be consistent with the reasoning of the courts in the only two cases which appear to have construed provisions of the Uniform Partnership Law and the provisions of similar statutes of frauds. In *Ellis v. Mihelis,* 32 Cal Rptr 415, 384 P2d 7 (1963), the California Supreme Court reasoned that when a partner acts within the usual course of the partnership business he needs no express authority from the other partners, and that in such an event written authority is not required for a conveyance of real property. The court went on to hold, however, that if express authority is needed for the partner to enter into a real property transaction, as in the event that the sale is not in the usual course of the partnership business (the situation in that case), then the statute of frauds is applicable and his authority must be in writing.

To the same effect, it was held by the Pennsylvania Supreme Court in *Feingold v. Davis,* 444 Pa 339, 282 A2d 291 (1971), that the statute of frauds required that the authority of a partner to sell real property of the partnership must be in writing. *Id.* at 294. The court emphasized, however, that the transaction involved in that case was clearly outside of the usual scope of the business of the partnership, with the result that such a transaction was not binding on the partnership without express authority from the other partners. *Id.* at 293-94.

Returning to the facts of this case, Mr. Vandehey was clearly acting within the apparent course or scope of the business of the joint venture when he undertook to sell Family Acres to the plaintiff. Indeed, the purpose of the

---

believes that the agent is authorized to do them and has no notice that he is not so authorized."

*See Croisant v. Watrud,* 248 Or 234, 432 P2d 799 (1967). As discussed in this opinion, ORS 68.210 is controlling upon the question of whether a partner or venturer has authority to bind the partnership or venture in his actions. It should be noted, however, that the analysis under ORS 68.210 and Section 161 of the Restatement is similar. The primary question to be decided under both is whether the partner or venturer's actions were within the scope of the partnership or venture business, and both provide for an exception to that rule when the other party had actual notice that the act in question was not authorized.

joint venture was to develop and sell that property.[7] If, however, to paraphrase ORS 68.210(1), Mr. Vandehey had "in fact no authority to act for the partnership in (that) particular matter, and the person with whom he (was) dealing (had) knowledge of the fact that he (had) no such authority," then he could not convey title to that property in the absence of express authority to do so.

According to the testimony of Mr. Stone himself, as the president of plaintiff corporation, in his initial conversation with Mr. Vandehey, Mr. Stone made an offer to purchase the property at a price of $15,000 per lot and was told by Mr. Vandehey that he (Mr. Vandehey) did not have authority to enter into a sale for less than $15,500 per lot and that "he would have to discuss" that offer "with his partner, Mr. Leonard." Mr. Stone also testified that the next day Mr. Vandehey told him (Mr. Stone) that he (Mr. Vandehey) had discussed the matter with Mr. Leonard and that they had agreed to sell the property for $15,250 per lot, and that Mr. Stone then accepted that counter-offer.

These facts, based upon testimony offered by the plaintiff, make it clear that on the first day of the conversations between Mr. Stone and Mr. Vandehey, Mr. Stone was informed of the fact that Mr. Vandehey's authority to sell the property was limited to a sale at a price not less than $15,500 per lot. In other words, Mr. Stone then "had knowledge of the fact" that Mr. Vandehey did not have authority as an agent of the joint venture, acting within the apparent or usual scope or course of the business of the joint venture under the initial provisions of ORS 68.210(1), to sell the real property being developed by it for the best price that he could negotiate. Instead, Mr. Stone then "had knowledge of

---

[7] Normally the sale of all partnership assets is outside the usual course of business. *See* Crane, Law of Partnership 288 (1968). However, it is within the usual course of business for partners to sell real property that is held for the purpose of sale. *See Ellis v. Mihelis*, 32 Cal Rptr 415, 384 P2d 7, 14 (1963); Crane, *supra* at 288; Rowley, Partnership 286 (1960).

In this case the property in question, Family Acres, was held for the purpose of sale and thus conveyance of such property was within the usual course of business. Indeed, sale of the property was necessary for the venture's success, since it was by sale of the property that profit was to be made. Therefore, even though sale of Family Acres meant eventual termination of the joint venture, such termination was contemplated from the beginning as a usual and necessary part of the business.

the fact" that the authority of Mr. Vandehey was expressly limited to a sale at a price not less than $15,500 per lot.

It follows, to again paraphrase the final provision of ORS 68.210(1), that Mr. Vandehey "had in fact no authority to act for the (joint venture) in the particular matter" (i.e., the proposed sale of the property at a price of $15,000 per lot as offered by Mr. Stone), and (Mr. Stone) "had knowledge of the fact that he (Mr. Vandehey) had no such authority." It also follows, in our opinion, upon application of the provisions of ORS 68.210 and 68.220, that because of that limitation upon the authority of Mr. Vandehey to sell the property, and because the title to that property was then held in his name, Mr. Vandehey had no authority to enter into an earnest money contract the next day for the sale of the property at a price of $15,250 per lot unless he had express authority from Mr. Leonard to do so as an agent of the joint venture and unless that express authority was in writing, as required by ORS 41.580(6) for agents selling real property.

Plaintiff would escape this conclusion by the contention that the "exception" provided by ORS 68.210(1) has no application in this case because:

"The trial court believed Mr. Stone and disbelieved Mr. Vandehey on that point. The court's finding was that Mr. Vandehey had told Mr. Stone he *did* have authority to sell Family Acres, but that the statements were insufficient to bind Mr. Leonard to the transaction. Mr. Vandehey's statements (that he had authority to sell real property), which the court found had been made, crossed the final statutory hurdle necessary to bind both partners and to convey Family Acres from defendants to plaintiff."

It seems clear to us, however, that the trial court's finding, based upon the testimony of Mr. Stone that Mr. Vandehey told Mr. Stone that he did have authority to sell Family Acres, must have referred to the testimony by Mr. Stone that in his *second* conversation with Mr. Vandehey on the *second* day when he was told by Mr. Vandehey that he (Mr. Vandehey) had authority to sell Family Acres at a price of $15,250 per lot. As previously noted, however, Mr. Stone also testified that in his *previous* conversation with Mr. Vandehey on the *previous* day he was told by Mr.

Vandehey that he had no authority to sell at a price of $15,000 per lot or at a price less than $15,500 per lot.

For reasons previously stated, we are of the opinion that under these facts what plaintiff refers to as the "exception" provided by ORS 68.210(1) was not satisfied and that because Mr. Vandehey did not have express authority in writing when he entered into the earnest money agreement to sell Family Acres, that agreement was not binding upon the joint venture or upon Mr. Leonard, the other member of the joint venture. It follows, in our opinion, that the Court of Appeals erred in holding that Mr. Vandehey had authority to bind the joint venture when he entered into that agreement. For that reason we need not address the remaining issue of whether the earnest money agreement, by its terms, was an enforceable contract.

The decision by the Court of Appeals is reversed and this case is remanded to the trial court with instructions to reinstate its original decree dated May 14, 1979.

Reversed and remanded.

**PETERSON, J.,** concurring.

I concur in the result in this case. I am not entirely convinced with the majority analysis, however, and therefore wish to express some concerns.

I

The Uniform Partnership Act was drafted in 1914 by the Conference of Commissioners on Uniform State Laws. It was adopted in Oregon in 1939. Or Laws 1939, ch 550. It contains carefully considered provisions regarding the ownership and transfer of real property. ORS 68.120(2) states, specifically and clearly, that joint ownership of property "* * * does not of itself establish a partnership, whether such coowners do or do not share any profits made by the use of property." *Something more* than joint ownership therefore must exist before a partnership comes into existence. The majority opinion finds such *something more* to exist, and concludes that "* * * the relationship of the defendants was that of a joint venture rather than a partnership." It would be more correct to say that because a joint venture is a species of partnership (a partnership for a single transaction is a joint venture, *Hayes v. Killinger,*

235 Or 465, 470, 385 P2d 747 (1963)), partnership law therefore applies. My concern, however, stems from the application of ORS 68.210(1) and 68.220(4) to the facts.

## II

The provisions concerning the ownership and transfer of real property are found in ORS 68.220, which has five sections. Parts (1) and (2) concern conveyances where title to real property is in the partnership name. Part (3) concerns the situation where the title "is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership." Part (5) states that "[w]here the title to real property is in the names of all the partners a conveyance executed by all the partners passes all their rights of such property."

To digress for a moment before further discussing ORS 68.220 it appears to me that the design of the Uniform Partnership Act, specifically ORS 68.220, was to make it possible, by examining appropriate public records, to follow the chain of title of real property in order to determine whether marketable title exists.[1] ORS 68.220 reflects an effort to set forth rules governing all conveyances of partnership property, whether the record title is in the name of the partnership (ORS 68.220(1) and (2)) or in the name of one or more or all the partners (ORS 68.220(3), (4), and (5)).

Clearly, subparts (1), (2) and (3) are inapplicable, for record title was in the name of all the partners. Therefore, subsections (4) or (5) may apply. Subsection (5) does not apply, however, since the conveyance was not executed by "all the partners." That leaves subpart (4), which the majority cites as the applicable section. It provides:

"(4) Where the title to real property is in the name of one or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of subsection (1) of ORS 68.210."

[1] In addition to the deed records, one such record might be the assumed business name filings. Under ORS chapter 648, a partnership is required to register an assumed business name with the Corporation Commissioner which lists "the real and true name of each person conducting or intending the business, or having an interest therein * * *." ORS 648.010(2)(b).

Subsection (4) does not apply because the conveyance was not executed either by "a partner in the partnership name" or "in his own name." The conveyance was in the name of "Vandehey Development Co." In short, the conveyance here involved does not come within any section of ORS 68.220, and for that reason alone I would reverse. Where title to real property is concerned, whether marketable title exists should be determinable by an examination of public records.

In footnote 5, the majority state that the defendants made no contention "* * * that ORS 68.220(4) does not apply because VDC signed the earnest money agreement instead of Vandehey himself." The defendants, in their brief, argued:

> "* * * This section [ORS 68.210(1)] raises at least two questions with respect to this transaction. First, did Vandehey execute an instrument in the partnership name for the purpose of apparently carrying on in the usual way the business of the partnership. Second, did Stone have knowledge that Vandehey, in fact, had no authority to act on behalf of Leonard.
>
> "The answers to those questions are all in the negative. In the first place, no instrument was executed in a partnership name. On the contrary, the earnest money documents were in the name of Vandehey Development Co., and Leonard's name does not appear anywhere on them with the exception of the penciled entry on the Addendum. * * *."

It seems to me that the issue was at least arguably raised.

### III

Subsections (1) through (4) of ORS 68.220 are limited by words to this effect: "* * * provided the act is one within the authority of the partner under [ORS 68.210(1)]."[2] This brings me to the majority holding that because Stone was on notice that Vandehey's authority was limited, the statute of frauds (ORS 41.580(6)) applies. The majority reason as follows:

---

[2] Subsection (5) is not so limited because it covers the situation in whch title to real property is in the names of all partners and all the partners execute the document conveying title. Thus, no question of authority would arise.

"* * * [I]t would appear to follow that the act of a partner in selling real property when in the apparent scope of the partnership business is binding upon the partnership and the other partners without obtaining their written consent, notwithstanding the provisions of the statute of frauds, ORS 41.580(6), requiring the authority of an agent to sell real property to be in writing. Conversely, it would appear that when a partner cannot act except by express authority from the other partners by reason of the provisions of ORS 68.210 and 68.220, then the authority of such a partner is substantially the same as that of any other agent of the partnership in the sense that he must have express authority to act, with the result that when a partner undertakes to sell real property in such a situation his authority to do so must be in writing because of ORS 41.580(6).

"* * * * *.

"These facts, based upon testimony offered by the plaintiff, make it clear that on the first day of the conversations between Mr. Stone and Mr. Vandehey, Mr. Stone was informed of the fact that Mr. Vandehey's authority to sell the property was limited to a sale at a price not less than $15,500 per lot. In other words, Mr. Stone then 'had knowledge of the fact' that Mr. Vandehey did not have authority as an agent of the joint venture, acting within the apparent or usual scope or course of the business of the joint venture under the initial provisions of ORS 68.210(1), to sell the real property being developed by it for the best price that he could negotiate. Instead, Mr. Stone then 'had knowledge of the fact' that the authority of Mr. Vandehey was expressly limited to a sale at a price not less than $15,500 per lot."

"It follows, to again paraphrase the final provision of ORS 68.210(1), that Mr. Vandehey 'had in fact no authority to act for the (joint venture) in the particular matter' (i.e., the proposed sale of the property at a price of $15,000 per lot as offered by Mr. Stone), and (Mr. Stone) 'had knowledge of the fact that he (Mr. Vandehey) had no such authority.' It also follows, in our opinion, upon application of the provisions of ORS 68.210 and 68.220, that because of that limitation upon the authority of Mr. Vandehey to sell the property, and because the title to that property was then held in his name, Mr. Vandehey had no authority to enter into an earnest money contract the next day for the sale of the property at a price of $15,250 per lot unless he had express authority from Mr. Leonard to do so as an

agent of the joint venture and unless that express authority was in writing, as required by ORS 41.580(6) for agents selling real property."

ORS 68.210(1) provides that the act of the partner binds the partnership "* * * unless [1] the partner so acting has in fact no authority to act for the partnership in the particular matter, and [2] the person with whom he is dealing has knowledge of the fact that he has no such authority." Vandehey's authority was unquestionably *limited* in that he could sell but only at $15,000; but that is not to say that he had "no authority to act for the partnership." I fail to see why Stone's knowledge as to Vandehey's stated lack of authority to sell for $15,000 per lot, on one day, puts Stone on notice under ORS 68.210(1) that Vandehey lacked authority to sell for $15,250, on the next.

The holding of the majority opinion may have significance far beyond this case, and may apply to any sales transaction in which a partner tells a would-be buyer or seller, "I have no authority to deal at that price." As I understand the majority, once such a statement is made by a partner, the other party deals at peril, absent something more than the expression of the partner that the partner now has such authority. Thus, if a party (Mr. Buyer) is dealing with a partner (Mr. Seller) and Seller says that he has no authority to sell at a price less than $\underline{\$x + \$5}$ on Monday, but calls on Tuesday and says that the deal can be made at $x, even if Seller confirms with a purchase order or other sales document, signed by Seller as "partner," the partnership is not bound because Buyer, on Monday, was told by the partner that his authority was then limited. Under the majority opinion, Buyer, before dealing with Seller on Tuesday at the new price, would need to obtain some other verification or expression of Seller's *express authority* (such verification, in the case at bar, being a writing complying with the Statute of Frauds).

In short, I do not believe that Stone's knowledge of Vandehey's limitation of authority on the first day necessarily compels the conclusion that Stone was thereupon on notice that Vandehey had "no authority to act for the partnership in the particular matter," at a different price, on the next.

However, in view of the fact that the conveyance did not meet the requirements of ORS 68.220(4) (see Part II, above), I concur in the result.

Denecke, C. J., joins in this concurring opinion.