Argued and submitted July 6, affirmed as modified on appeal and affirmed on cross-appeal October 21, reconsideration denied December 18, 1987, petition for review denied February 2, 1988 (305 Or 45)

# MURRAY,
## dba Murray Well Drilling Company,
### *Respondent - Cross-Appellant,*

*v.*

# ROWENA DELL JOINT VENTURE et al,
### *Appellants - Cross-Respondents.*

## (17384; CA A40500)

744 P2d 569

John F. Cushman, Hood River, argued the cause and filed the briefs for appellants - cross-respondents.

Arthur B. Knauss, Milwaukie, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

In 1974, plaintiff and the individual defendants entered into a joint venture for the purpose of acquiring, developing and reselling land located in the Columbia River Gorge. The venture acquired a tract of land, a portion of which has been developed and sold. The venture is divided into 15 shares. Plaintiff, a well driller, acquired one-half of one share in return for drilling a well on the property. Joint venturer Karl Johnson is designated in the agreement as the venturer's manager. Plaintiff became dissatisfied with Johnson's management of the property and brought this action. Defendants answered, requesting that the court determine the value of plaintiff's interest and terminate the joint venture. The trial court determined that plaintiff was entitled to $32,390 as payment for his one-half share, plus $10,560 for an account payable to him for a second well that he had drilled on the property.

Defendants appeal; plaintiff cross-appeals[1] from the trial court's finding that he did not acquire an additional share of the joint venture. We modify the judgment and affirm it as modified.

Defendants raise three assignments of error. We address them in reverse order. The third concerns whether Full Faith and Credit must be accorded to a Washington court decree. Defendants conceded at oral argument that the issue does not affect the outcome of this case; therefore, we need not address it.

■  In their second assignment, defendants argue that the trial court should have applied the doctrine of *res judicata* to plaintiff's claim to collect the account payable for the drilling of the second well, which it argues was determined in two previous actions. *Res judicata* bars any action on matters which were litigated or which could have been litigated in a previous action. *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 192, 531 P2d 266 (1975). Defendants have the burden of proof on its *res judicata* defense. *Troutman v. Erlandson*, 287 Or 187, 196, 598 P2d 1211 (1979). According to the trial transcript, the

---

[1] The judgment was entered against defendant Rowena Dell Joint Venture; plaintiff's claims against all individual joint venturers were dismissed, and judgment was entered accordingly. All defendants appeal, however. Plaintiff cross-appeals from the judgments in favor of the individual defendants, but assigns error only as to Rowena.

trial court took judicial notice of the two cases. In its brief to this court, defendants attached the pleadings and judgment in the case which they allege is a bar to the present claim: *Murray dba Murray Well Drilling Co. v. Johnson,* Wasco County Circuit Court No. 17382. The judgment does not specify on what ground relief was denied. Even if that case was brought for payment for drilling the same well as the one for which plaintiff had an account payable with the joint venture (and it is not clear that it is the same), *res judicata* does not preclude this action, because this claim against the joint venture could not have been determined in litigation of a personal claim against only one of the individual joint venturers. Accordingly, we affirm the award of $10,560 for an account payable for the drilling of a well on joint venture property.

■    In their first assignment of error, defendants challenge the amount awarded to plaintiff as his portion of the joint venture interest. First, they argue that the trial court erroneously used the market value method to determine the valuation of the joint venture.[2] They argue that the proper method is provided in the written partnership agreement. Paragraph 15 provides:

> "In the event of the death, withdrawal, adjudication of bankruptcy, or incompetency of any party, the remaining parties shall have the right to continue the business of the joint venture. In the event of the death or incompetency of any party, it is agreed that the distributee, legatee, or guardian of said party shall have the right to elect to join the joint venture and thereafter enjoy all the rights of a party, subject, however, to the terms and conditions set forth in this agreement. It shall be the duty of the Manager to give written notice to the distributee, legatee, or guardian of their rights under this provision of the agreement. The election to join the joint venture shall be made by written memorandum thereof delivered to the Manager, not later than thirty (30) days following receipt of the written notice by the Manager.

> "In the event that such election is not received within the time specified herein, or in the event of the adjudication of bankruptcy of any party, all of the remaining parties shall have the equal right, but not the obligation, to purchase part or all of the interest of such party. Notice of election by the

---

[2] Neither party argues that the court erred when it used the date the action was filed to determine plaintiff's interest for purposes of the dissolution.

remaining parties to purchase such interest shall be made in writing to the Manager and to the withdrawing joint adventurer or to his personal representative within thirty (30) days from the date written notice is given by the Manager to the remaining parties of the failure of the distributee, legatee, or guardian to elect to join the joint venture, or of the bankruptcy of one of the parties. *If such election be made by the remaining parties upon death, adjudication of bankruptcy, or incompetency, the purchase price for such share, part thereof, or shares shall be equal to the amount that the withdrawing party has contributed to the capital of the joint venture.* The purchase price so determined shall be paid to the withdrawing party or to his personal representative within two (2) years after the date of his death, adjudication of bankruptcy, or incompetency." (Emphasis supplied.)

Defendants argue that, according to the agreement, a withdrawing party is only entitled to receive the return of the capital contribution. Defendants misread the confusing provision. It says that the remaining joint venturers may purchase the share of a venturer who has died or has been adjudicated bankrupt or incompetent for an amount equal to the withdrawing party's capital contribution. The provision does not provide a method for valuing a withdrawing partner's share when withdrawal is other than by death, bankruptcy or incompetency. Thus, the written agreement is not controlling.

■    The trial court determined that, because the agreement does not apply, this case is governed by the Uniform Partnership Act, ORS chapter 68. We agree. Partnership law controls joint ventures. *Stone-Fox, Inc. v. Vandehey Development Co.,* 290 Or 779, 785, 626 P2d 1365 (1981). ORS 68.600(1) provides:

"When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners."

If the dissolution is in contravention of the agreement, the partners also have the right to damages for breach of the agreement. ORS 68.600(2). No one argues here that there are damages from any breach of the agreement. Thus, plaintiff is entitled to have the partnership property applied to discharge

its liabilities and the surplus applied to pay in cash the net amount of his half share.

ORS 68.620 provides:

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(1) The assets of the partnership are:

"(a) The partnership property;

"(b) The contributions of the partners necessary for the payment of all the liabilities specified in subsection (2) of this section.

"(2) The liabilities of the partnership shall rank in order of payment, as follows:

"(a) Those owing to creditors other than partners;

"(b) Those owing to partners other than for capital and profits;

"(c) Those owing to partners in respect of capital;

"(d) Those owing to partners in respect to profits."

Partnership property is "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership * * *." ORS 68.130(1). The parties disagree as to the method that should be used to value the partnership property. Plaintiff argues that the trial court correctly relied on market value but defendants contend that the court should have considered only book value.

■ The statute does not specify a particular method. We adhere to the view we expressed in *Delaney v. Georgia-Pacific,* 42 Or App 439, 601 P2d 475 (1979), *rev den* 288 Or 519 (1980), that market value, although not the only method of valuation, is one acceptable method of determining the value of joint venture property. The trial court determined that

"[t]he book value of plaintiff's .50 shares as of * * * December 31, 1982, was $12,956.47.

"As of December 31, 1982, the book value of the joint venture was approximately $399,500.

"The net market value of plaintiff's .50 shares as of the date plaintiff filed his complaint on May 26, 1982, was $32,390."

Neither party requested special findings, and we are unable to determine from the record the basis of the trial court's decision.

We review the valuation *de novo*. There is no testimony regarding a determination of the total market value of the partnership property. The evidence submitted consists of a large number of exhibits, including the venture's general ledger and tax returns for several years. Our review is hampered by the fact that the parties do not attempt any meaningful explanation of the significance of much of the evidence. We thus base our determination on the evidence that the parties represent to be of significance.

At trial, defendants offered the testimony of Williams, a CPA, who explained the joint venture tax returns for 1974 through 1984 and testified that the tax return, in effect, mirrors the venture's general ledger. He testified that, on withdrawal from the joint venture, plaintiff should receive his account payable and his capital account, which, according to the joint venture tax return, was $10,528[3] at the end of 1982. There is no evidence from which to calculate the adjustment that would be necessary to arrive at a true figure for May 26, 1982, the date when plaintiff filed his complaint. Because defendants do not challenge the trial court's determination of value as of the end of the year, we will also use year-end figures. Williams testified that the capital account reflects the difference between the assets at book value and the liabilities. Thus, the market value of unsold property is not reflected in the capital account.

Plaintiff testified that the market value of the unsold land is $7,500 per parcel for 13 developed parcels and $1,250 per acre for the remaining 553 undeveloped acres. Johnson did not disagree that the developed parcels are worth $7,500 each, and we so find. He contradicted plaintiff's valuation of the

---

[3] Apparently, the trial court added to plaintiff's capital account an amount that reflected his portion of the "deferred gain" shown on the tax return, which Williams testified reflected the gain on land that has been sold but is not yet paid for. The balance sheet on the tax return shows as an asset "other investments," which includes contracts receivable. Thus, the deferred gain may be a portion of those receivables. If so, it would be error to add it to the capital account, because it has already been included in calculating the value of the capital account. Because there is no evidence about the relationship between the contracts receivable and the deferred gain, we will not add it to plaintiff's capital account.

remaining acreage, but evidence was submitted to show that, in 1982, Johnson entered into an earnest money agreement to sell approximately 149 acres of undeveloped Rowena Dell property for $1,248.32 per acre. Although the sale was not consummated, the sale price indicates defendants' assessment of the value of the property. Thus, the market value of the unsold parcels is (13 × $7500) + (553 × $1,248.32), which totals $787,820.96. The market value does not take into account the cost of the land or the cost of any improvements; therefore it must be reduced by that amount. Williams testified that the tax return entry for inventory reflects the original cost plus the accumulated cost of land held for sale. At the end of 1982 the inventory figure was $314,086. The market value of the unsold land, $787,820.96, less the cost, $314,086, equals $473,734.96. Plaintiff is entitled to his proportionate share of that amount, or one-thirtieth,[4] which equals $15,791.17. When that is added to plaintiff's capital account, the total value of plaintiff's half share is $26,319.17.

■ ■ Defendants contend that the trial court erred in awarding interest on the judgment from the date of the complaint. Prejudgment interest is recoverable when the exact amount owed is "either *ascertained* or *ascertainable* by simple computation, or by reference to generally recognized standards such as market price." *Portland Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943) (emphasis in original). The value of plaintiff's agreed ownership interest, one-half of one share, was ascertainable by reference to the statutory formula for the distribution of partnership assets, ORS 68.620, and the market values of real property. The trial court did not err in awarding prejudgment interest.

■ Defendants argue that prejudgment interest is not recoverable because it was not sought in the pleadings. Because the argument is raised for the first time on appeal we will not consider it.

Plaintiff cross-appeals the trial court's determination that he did not acquire Ellett's one share interest in the joint venture. Before the filing of this lawsuit, plaintiff and Ellett, another joint venturer, had entered into an agreement

---

[4] It is undisputed that plaintiff owns *at least* one-half of one of the fifteen joint venture shares, or one-thirtieth of the total.

whereby Ellett would convey his one share in the venture to plaintiff in return for plaintiff's agreement to drill wells worth $25,000 for Ellett over the next five years. At trial, defendants contended that the share transfer was ineffective, because it did not comply with the assignment clause in the joint venture agreement in that Ellett did not give notice to the other joint venturers of the proposed sale. The trial court agreed. Plaintiff argues that noncompliance with the notice requirement was a result of Johnson's failure to fulfill his duties as managing partner and that defendants should be estopped to invalidate the transfer on that basis or should be held to have waived the right to notice under the agreement.

The joint venture agreement restricts assignment of rights in the venture:

> "No party shall assign his right to participate in the management or administration of the joint venture without the prior consent of all of the other parties, voting pursuant to Paragraph 6. If, however, any party desires to sell or assign his right to share in the profits of the joint venture, he shall first give the other parties written notice of his desire to do so, by a written memorandum delivered to the Manager, setting forth the price and terms of the contemplated sale assignment as offered by a bonafide third party, and the other parties shall have the equal right to purchase such share, part thereof, or shares, for the period of thirty (30) days from receipt of such notice, at the price and terms as offered by the said third party."

Plaintiff does not dispute that that provision applies to the instant transaction by its terms and does not argue that, because the transaction was between partners of the joint venture, rather than between a partner and a third party, it does not apply. We accept that position for the purpose of this appeal.

The record indicates that Ellett orally advised Johnson of his intention to sell the share to plaintiff. Plaintiff argues that Ellett's oral notice constitutes constructive notice to the remaining partners, pursuant to paragraph 9 of the joint venture agreement[5] and ORS 68.240.[6] Additionally, because

---

[5] Paragraph 9 provides, in part:

"All notices by the other parties to this agreement may be given to [the

Johnson apparently indicated to Ellett that neither he nor the remaining partners had any interest in acquiring Ellett's share, plaintiff asserts that Johnson and the remaining partners should be estopped from raising the contract provision. Finally, plaintiff argues that Johnson's failure to warn Ellett of the requirement to give written notice constitutes a waiver of the requirement.

■■ Although Johnson had notice of Ellett's intention to sell his share, we hold that the evidence is insufficient to constitute an estoppel or to show that there was a waiver of the notice provision. Additionally, whatever the effect of Ellett's oral representation to Johnson, it did not comply with the provisions of the agreement and could not constitute constructive notice to the remaining partners. The conveyance purports to transfer "all of Ellett's right, title and interest in [Rowena Dell Joint Venture], being one share." If the transfer is treated as a conveyance of Ellett's right to participate in the management or administration of the venture, it is ineffective, because Ellett did not receive the consent of all of the other parties. If it is an assignment or sale of his right to share in the profits, it is also ineffective, because he did not give a written memorandum to the manager containing the price and terms of the proposed assignment. In either case, compliance with the assignment clause was not Johnson's obligation. Ellett did not comply either with the requirement of consent or the requirement of a written memorandum; Johnson had no duty to give notice to the other partners. The transfer was ineffective.

Judgment modified to award plaintiff the value of one-half share, $26,319.17, plus the account payable for the drilling of a well, $10,560, plus interest from May 26, 1982; affirmed as modified on appeal; affirmed on cross-appeal.

---

Manager.]"

[6] ORS 68.240 provides, in part:

"Notice to any partner * * * operate[s] as notice to or knowledge of the partnership * * *."