Argued January 10, remanded with directions May 23, 1974

# FIRST WESTERN MORTGAGE COMPANY, *Appellant-Cross-Respondent, v.* HOTEL GEARHART, INC., *Respondent-Cross-Appellant.*

522 P2d 881

*Paul R. Meyer,* Portland, argued the cause for appellant and cross-respondent. With him on the briefs were Leo Levenson, and Kobin & Meyer, Portland.

*Lawrence M. Dean,* Astoria, argued the cause for respondent and cross-appellant. With him on the brief were Jeanyse R. Snow, and Macdonald, Dean, McCallister & Snow, Astoria.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL and BRYSON, Justices.

HOWELL, J.

This appeal is a sequel to *First Western Mtge. Co. v. Hotel Gearhart,* 260 Or 196, 488 P2d 450 (1971). In that case we reversed the decree of the trial court and held that a joint venture between the plaintiff and defendant Hotel Gearhart for the purchase and development of property located in Gearhart, Oregon, should be dissolved. The suit was remanded with directions to enter a decree granting a dissolution and a winding up of the joint venture, and for an accounting between the parties. The plaintiff now appeals from the trial court's determination of which assets constituted joint venture assets, and the defendant Hotel Gearhart cross-appeals from the accounting made by the trial court.

The facts underlying this case are reported in *First Western Mtge. v. Hotel Gearhart,* supra, and we will not repeat them here except insofar as they pertain to the issues now presented.

Defendant Hotel Gearhart (hereinafter "Hotel") borrowed $1,000 and acquired a 30-day option to purchase eight acres of adjacent oceanfront property owned by Samson, Inc. A few days prior to the termination date of the option, plaintiff First Western Mortgage Company (hereinafter "First Western") and the defendant Hotel entered into a joint venture agreement for the purchase and development of the property. First Western was to provide the funds necessary for the purchase of the entire property. The option was exercised, and First Western paid $75,000 as the first payment on the purchase price. Hotel was to be responsible for the operation and management

of the motel and restaurant on the property, and First Western was to be responsible for the financing, planning, construction, and selling of condominium units which were to be constructed on the Samson property. All profits were to be divided on the basis of 75% to First Western and 25% to Hotel.

The Samson contract provided that Samson would release the land in four parcels, referred to by the parties as A, B, C and D, as separate payments were made on each parcel.

After First Western provided the initial $75,000, Samson released Parcel A to Hotel, which in turn conveyed it to First Western. Parcel A was developed into condominium units which were sold, and a profit of $95,000 was realized. This amount was used to secure the release of Parcel B to defendant Hotel, which in turn conveyed it to plaintiff First Western as was done with Parcel A.

Thereafter serious dissension arose between First Western and Hotel, resulting in plaintiff filing a suit for dissolution of the joint venture. Defendant Hotel filed a countersuit for rescission. The trial court granted the rescission and awarded Parcel B and the contract rights in Parcels C and D to Hotel. Plaintiff First Western appealed, and we held that rescission was improper but that the joint venture should be dissolved and an accounting and winding up of the joint venture should be accomplished.

However, after the trial court entered its decision granting all rights in Parcels B, C and D to Hotel, and while the appeal was pending, Hotel entered into an agreement with defendant North Coast Development, Inc. (hereinafter "North Coast"). Under

that agreement, defendant Hotel sold a 60% interest in Parcels B, C and D of the joint venture agreement for the sum of $354,000, which purchase price was to be paid by North Coast assuming and agreeing to pay all the obligations of the joint venture under the Samson contract.

After the decree on the mandate in the first appeal was entered by the trial court, First Western recognized and ratified the sale by Hotel of the 60% interest in Parcels B, C and D to North Coast.

On the remand the trial court held that Parcels A and B purchased under the Samson contract were joint venture assets, but that all contractual rights under the Samson contract as to Parcels C and D were the sole property of defendant Hotel. The record does not disclose the reasons why the trial court awarded Parcels C and D to Hotel. Unfortunately, while some reference is made in the briefs to a letter opinion of the trial court, the opinion does not appear in the record.

Plaintiff First Western contends that the joint venture assets include the contractual rights to Parcels C and D and that it should be decreed to have a 75% interest in the 40% interest remaining in the Samson contract as it relates to Parcels C and D.

Defendant Hotel contends that the Samson contract "was never a joint venture asset" but that "each parcel of land under the Samson contract only became a temporary asset of the joint venture after it was released by Samson, Inc. and before it was sold to condominium owners."

■■ Some of the factors which should be considered in determining whether the joint venturers intended

real property held by a joint venture[1] to be an asset of that joint venture are: the use to which the land is put; whether the partnership improved the property; whether the books of the partnership carry the property as an asset of the partnership; declarations of the partners; and whether income or proceeds of the property are treated as partnership funds. *Hurst v. Hurst,* 95 Or 563, 188 P 182 (1920); 45 ALR2d 1009 (1956); 2 Rowley on Partnership (2d ed) 505, § 52.33 (1960); Crane and Bromberg, Law of Partnership 202, § 37 (1968).

A similar case to the one at bar is *Kelso v. Coburn,* 334 Mich 43, 53 NW2d 686 (1952). There, the court held that where one partner contributed an option to purchase real property to the partnership and the partnership then executed the option, made payments on the contract of sale, treated the outstanding balance due as a liability on its books, and carried the real property as an asset of the partnership, the vendee interest had become an asset of the partnership. *Accord Andrews v. Bush,* 109 Cal App 511, 293 P 152 (1930).

In the instant case the defendant contends that only as the property was released into its possession did the property become a joint venture asset. However, the joint venture agreement contemplates that First Western was to make payments either from its own resources or from profits realized from the investment of those resources in developing condominiums and that, ultimately, each party was to share in whatever profits were to be produced by the enterprise. Thus, once the initial payment was made on

---

[1] The law which applies to partnership applies equally to joint ventures. Wheatley v. Carl Halvorson, Inc., 213 Or 228, 323 P2d 49 (1958).

the Samson contract, the initial investment and other money expended in developing the land began generating funds to pay for additional purchases of land, with the ultimate expectation being that the entire tract was to be paid for out of these internally generated profits. Indeed, this is precisely what occurred. When the first parcel was fully developed and sold, a $95,000 profit was realized by the joint venture, and a substantial portion of this profit was then used to purchase the second parcel. Also, Hotel Gearhart, in a financial statement prepared during the course of the joint venture operation, carried the entire tract as an asset of the joint venture and, correspondingly, carried the entire amount outstanding on the Samson contract as a liability of the venture.

■ From all of the above, it is clear that the parties intended that the Samson contract was to become a joint venture asset of the partnership.

■ Defendant Hotel also contends that even if the contract rights to Parcels C and D are a joint venture asset, nevertheless it is entitled to ownership as part of the distribution of assets upon dissolution of the joint venture. Defendant argues that "the Samson contract is not a 'profit', but the development of each parcel was a means of generating profit," and further explains this in the following manner:

"If the Samson contract was a joint venture asset, then it must be accounted for upon dissolution. However, even if it was a joint venture asset, it does not follow that plaintiff is entitled to a share of it. If it was a partnership asset, it was an asset contributed by defendant, which must be returned to defendant on dissolution."

We do not agree. ORS 68.130 (1) defines partnership property as "all property originally brought

into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property." ORS 68.310 (1) provides that unless the parties agree otherwise, each partner shall be repaid his contributions, whether by way of capital or advances to the partnership.

■ Parties to a joint venture or partnership may agree between themselves to any distribution of capital or profits upon dissolution, but in the absence of such agreement ORS 68.620 controls. That statute provides:

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(1) The assets of the partnership are:

(a) The partnership property;
(b) The contributions of the partners necessary for the payment of all the liabilities specified in subsection (2) of this section.

"(2) The liabilities of the partnership shall rank in order of payment as follows:

(a) Those owing to creditors other than partners;
(b) Those owing to partners other than for capital and profits;
(c) Those owing partners in respect of capital;
(d) Those owing partners in respect of profits."

■ The defendant, having contributed the Samson option to the joint venture, lost all direct ownership rights in the contract and, correspondingly, any increment in the value of the contract while it was an asset of the joint venture is also property of the joint venture. Thus, when the Samson contract rights were

sold and a profit was realized in the form of the 40% interest, those proceeds were also property of the joint venture, and the plaintiff was entitled to an interest in those proceeds to the extent provided in the joint venture agreement.

The defendant cites *Hunter v. Allen,* 174 Or 261, 147 P2d 213, 148 P2d 936 (1944), for the proposition that "after discharge of partnership debts, assets are to be divided among the partners in proportion to the amounts each partner contributed." In that case a partnership was informally created between a mother and her son in which the mother contributed the use of a farm and her son contributed his labor. No express agreement spoke to the issue of the distribution of assets upon the dissolution of the partnership. The partnership ended upon the death of the mother, and the son sought to obtain a one-half interest in the land. In this context the court stated that "on dissolution of a copartnership, the capital assets, after settlement of the partnership debts, should be divided among the partners in proportion to the amounts which had been contributed thereto by them respectively." 174 Or at 267.

However, the facts in *Hunter* are not comparable to the facts in the instant case. There, the mother contributed the use of the farm to the partnership, and the son contributed his services. Under these circumstances the latter is not entitled on a dissolution of the partnership to any share of the partnership capital, and his share is limited to the profits. 174 Or at 267. In the case at bar, the defendant contributed the option, and the plaintiff provided the initial payment to exercise that option, plus the development, construction and sale of the condominium units, which

together formed the bases of the profits from the sale of the joint venture property. Hotel cannot consider the Samson option as an isolated, separate document giving defendant the entire ownership of the Samson contract. The option, and the funds provided by First Western, must be considered together, as both were necessary for the parties to acquire the Samson property.

Nevertheless, under ORS 68.620, in the absence of an agreement to the contrary, on a dissolution of a partnership the partner contributing capital is entitled to a return of his capital contribution before a division of profits is made.

■ The value of this capital contribution is determined as of the time of the contribution, not as of the time of dissolution. *Bass v. Daetwyler*, 305 SW2d 339, 342 (Mo S Ct 1957).

In the instant case the defendant Hotel contributed the option for which it paid $1,000. Unfortunately, we cannot ascertain from the record whether or not the parties intended this contribution to be a capital contribution and thus whether it should be returned as Hotel's capital contribution before any division of profits. In any event, if, on remand, Hotel can establish that the value of the option was to be considered a capital contribution, the $1,000 figure represents Hotel's actual cost of acquiring the option, and may or may not represent the reasonable market value of the option at the time it was contributed. *Ibid.*

■ Therefore, on the remand to the circuit court, the court should determine whether or not the parties intended that the option be Hotel's capital contribution, and if so, the value of Hotel's option as of the

time of its contribution to the joint venture and that amount should be awarded to defendant Hotel in the accounting before any division of profits is made between plaintiff First Western and defendant Hotel.

The defendant has filed a cross-appeal contending that the accounting by the trial court failed to take into consideration expenses improperly incurred by plaintiff in the construction and sale of condominiums on Parcel A. The expenses and inequalities alleged included "improper loans, inequalities of construction contract arrangements and questionable dispersal of funds from the joint assets."

Apparently the parties stipulated that the record in the first trial could be considered in the second.

Again, it is impossible to determine whether the trial court passed upon the merits of the defendant's allegations when it approved the accounting.

After the original suit was remanded for a dissolution and an accounting, both parties filed accountings. On the day set for the hearing on the objections to the individual accountings, the defendant Hotel's regular counsel failed to appear. The trial court entered an order overruling defendant's objections to plaintiff's accounting. However, the trial court also expressed concern about the effect of the order on the defendant's allegations of financial mismanagement in the construction of the condominiums on Parcel A.

Consequently, we do not know whether the trial court considered the merits of defendant's claim of mismanagement, whether defendant's objections to plaintiff's accounting were overruled because counsel

failed to appear at the hearing, or whether defendant's claims were considered at all.

■ Under these circumstances we believe the suit should be remanded for the trial court to consider the defendant's allegations of mismanagement and whether these allegations are supported by the record presently before the court from the first trial. If supported, they should be considered in the final accounting as a charge against plaintiff's interest.

This suit is therefore remanded to the trial court with the following directions:

1. The joint venture interests of the plaintiff First Western and defendant Hotel in Parcels C and D shall be sold as on execution, and the proceeds shall be distributed in the manner provided by ORS 68.620.

2. If the trial court determines that defendant Hotel is entitled to any sums due under defendant's allegations of mismanagement, such sums shall be deducted from plaintiff's interest in the proceeds of the sale of the interest in Parcels C and D.

3. To determine if the option contributed by defendant Hotel was intended to be a capital contribution to the joint venture, and if so, to determine its value and award that amount to defendant before establishing a division of the profits on the basis of 75% to plaintiff First Western and 25% to defendant Hotel.