Don G. SHEPPARD,
Pauline C. Sheppard, Robert H. McClay,
Doris McClay, Iver E. Cox and Karen M. Cox,
*Appellants,*

*v.*

Douglas G. SMITH
and Eastern Oregon Propane, Inc.,
nka S, S & S Enterprises, Inc.,
*Respondents.*

(88-171; CA A65946)

840 P2d 1367

George W. Kelly, Eugene, argued the cause for appellants. With him on the brief was Steven J. Joseph, La Grande.

David B. Hydes, Canyon City, argued the cause for respondents. With him on the brief were Julie Kendig Emmal and Hydes & Nickel, Canyon City.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs filed this action in ejectment and for damages for breach of a lease. Defendants denied that they had breached the lease and counterclaimed for damages for plaintiffs' breach of a right of first refusal to purchase land and for intentional interference with contractual relations. Plaintiffs appeal from a judgment for defendants on those counterclaims and awarding defendants attorney fees.

Plaintiffs are partners doing business as Alpen Dorf. In September, 1982, the Alpen Dorf partners were Don and Pauline Sheppard, Heber and Doris Hunt and Robert and Doris McClay. Together they owned a tract of approximately 19 acres in Baker County. That is the only property that the partnership owns, and its use is the only business in which the partnership engages. An A-frame building and a campground are on about 6 of the 19 acres. The only evidence of how the partners held title to the real property is that each couple owned an undivided one-third interest. However, by the terms of the Alpen Dorf partnership agreement, each partner's interest in the partnership was adjusted annually to reflect the relative contributions to capital.

On September 1, 1982, Alpen Dorf and defendant Smith, as president of defendant Eastern Oregon Propane, Inc. (EOP), executed a 5-year lease for the A-frame building and the surrounding 6 acres, described by metes and bounds, that contained the campground. Under the lease, EOP was to pay a base monthly rent, plus a percentage of its income from campground rentals and from selling gas and diesel fuel. The lease provided that, at the end of the 5-year term, EOP had the option to renew for another 5 years, and that

"The LESSEE shall have first right of refusal to purchase said property such right shall only be effective for 30 days after LESSEE is notified."

The lease did not mention anything about EOP's propane operations, which were located in Union and Baker counties.

On December 30, 1986, Doris Hunt, whose husband had died, sold her interest in the partnership to plaintiffs Cox. That transaction was evidenced by a real estate contract prepared by plaintiff Don Sheppard, which purported to transfer Hunt's

"interest in the the [*sic*] following described lands and premises situated in Baker County, State of Oregon, to-wit:

"The business known as the Alpen Dorf, being an R.V. Park and Gas Station presently under lease, together with the following land situated in Baker County, state of Oregon, to-wit: *See Attached Legal Description.*

"This sale also includes all of the business rental losses for the year 1986. It is also understood by the buyer that the interest in this property is adjusted yearly in accordance with with [*sic*] the percentage paid into the business by each partner."

The attached legal description identified, by metes and bounds, the 19 acres owned by the partners. By the sale, the Coxes acquired Hunt's interest in the partnership, which was 15.3% at that time.

Near the end of the first lease term, EOP notified Alpen Dorf of its intent to renew the lease. Plaintiffs refused to renew and filed this action on August 29, 1988, alleging breach of the lease and seeking to eject EOP from the premises.

In November, 1988, EOP sold its bulk propane operations, including trucks, rolling stock and inventory, to Farmers Union Central Exchange, Incorporated (Cenex), for $209,000. The contract also provided that Cenex would pay Smith $27,000 a year for 3 years in consideration for his covenant not to compete. On December 21, 1988, plaintiffs' attorney sent a letter to Cenex to inform it of their claims against EOP. The letter stated in part:

"We have a strong desire to conclude the litigation as soon as possible, and with as little expense to ourselves and any third parties as is possible. To do this, we feel we must have Cenex's cooperation, and we certainly thank you for that given to date.

"* * * * *

"In these circumstances, it is my firm opinion that Cenex should have been notified of the problem, and assuming the bulk transfer was not concluded before August 19th, 1988, of the pendency of the lawsuit.

"I would greatly appreciate your considering the paying into Court of the $27,000.00 payment due from Cenex to Mr. Smith personally on January 1st, 1989. This will save me the

time I would have to take to determine whether or not to implead Cenex, and it would probably save Cenex some expense if we did try to bring Cenex in, or seek recourse against Cenex later, which would be a drawn out and complicated affair. While I have done no research from Cenex's standpoint, I do not see how Mr. Smith could complain (certainly not Eastern Oregon Propane) about this procedure when he had the statutory obligation[1] to disclose our claim to Cenex, and his failure to do so at least theoretically can result in future unnecessary expense for Cenex. If we get a judgment, and Mr. Smith leaves the jurisdiction with the money, and Eastern Oregon Propane, Inc. is a hollow shell, my clients may want to look at Cenex, which no doubt will still be doing a thriving business within the jurisdiction. These latter comments are, for the present at least, only 'half-baked' musings, but please think about it."

Cenex then filed an interpleader action, naming plaintiffs and defendants as the defendants, and it paid $27,000 into court. Defendants prevailed in that litigation and received the full $27,000 payment. Defendants were required to pay 20% of Cenex's attorney fees, and plaintiffs were required to pay 80%.

After that proceeding was concluded, defendants filed their answer to the complaint in this proceeding, alleging counterclaims for breach of the lease, interference with business relations as a consequence of the Cenex matter and failure to honor the lease provision giving them a right of first refusal. The jury found that defendants had not breached the lease, but awarded plaintiffs possession of the premises and damages for lost profits.[2] It found for defendants on their counterclaims for intentional interference with contract and for breach of the right of first refusal.

---

[1] At the time, the Bulk Sales Law required the transferor to provide to the transferee

"the names and business addresses of all creditors of the transferor, with the amounts when known, and also the names of all persons who are known to the transferor to assert claims against the transferor even though such claims are disputed." ORS 76.1040 (*repealed by* Or Laws 1991, ch 83, § 1).

In the contract between EOP and Cenex, however, Cenex waived any right to notice of creditors under the law.

[2] The apparent inconsistency in the verdict is not explained and is not an issue on appeal.

Plaintiffs assign error to (1) the denial of their motions for a directed verdict, for judgment notwithstanding the verdict and alternative motion for new trial on defendants' right of first refusal claim; (2) the denial of their motion for a directed verdict and their motion to strike an allegation for claiming punitive damages on the interference claim; and (3) the award of attorney fees to defendants.

■ With respect to the breach of the right of first refusal claim, plaintiffs' argument that the "essence" of the Hunt-Cox contract was the sale of an interest in the partnership, to which defendants' right of first refusal did not apply, is dispositive. The right of first refusal clause in the lease clearly does not cover the sale of a partnership interest; it refers to "said property," which is the 6 acres of real property leased to defendants by the partnership. Uncontroverted evidence shows that the entire 19-acre tract was partnership property, because the partners treated it as an asset of the partnership in their partnership agreement, in their management of it and for tax purposes. That is true, even though title was held in the partners' individual names. ORS 68.130(1); *First Western Mtg. v. Hotel Gearhart*, 268 Or 613, 617, 522 P2d 881 (1974). Therefore, each partner held a share of the property as a "tenant in partnership." ORS 68.420(1). ORS 68.420 (2)(b) provides:

"A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property."

All that Hunt, alone, *could* convey — with or without approval of the other partners — was her interest in the partnership. That interest was her "share of the profits and surplus," which is personal property, not realty. ORS 68.430. The transfer "merely entitles the assignee to receive in accordance with the contract of the assignee the profits to which the assigning partner would otherwise be entitled." ORS 68.440(1). Moreover, nothing in the record — including the Hunt-Cox contract — suggests that Hunt ever represented herself to be selling any specific partnership property. After the sale, the Coxes became partners in Alpen Dorf, entitled to Hunt's interest in the partnership.

There is no evidence in the record from which a jury could have found that the parties intended the right of first refusal to apply to the purchase of a partnership interest. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). The evidence shows that Hunt offered to sell only her partnership interest, and there is no evidence that any partner ever expressed a willingness to sell specific partnership property. Therefore, the trial court should have granted plaintiffs' motion for a directed verdict on defendants' counterclaim for breach of the right of first refusal.

The award of attorney fees to defendants was based solely on a provision of the lease. Given our disposition on their claims for breach of the right of refusal, they have not prevailed on any claim based on the lease. Accordingly, they are not entitled to attorney fees. Plaintiffs contend that they are entitled to attorney fees, given the jury verdict awarding them damages and possession of the property. Because we cannot tell whether plaintiffs prevailed under the lease, we remand to permit the trial court to make that determination and, if it determines that plaintiffs did prevail under the lease, to determine the amount of attorney fees to which plaintiffs are entitled.

In their final assignments of error, plaintiffs contend that the court erred in denying their motion for directed verdict on defendants' counterclaim for intentional interference with business relations and in refusing to strike the punitive damages allegation. Even viewing the evidence in the light most favorable to defendants, there was insufficient evidence for a jury to find that plaintiffs wrongfully intended to interfere with defendants' contract with Cenex. The letter from plaintiffs' attorney to Cenex simply informed Cenex of plaintiffs' claims against EOP and Smith and of their desire to resolve them. The letter stated only that they "would appreciate" Cenex's paying the $27,000 owed to Smith into court. If Cenex did not do that, the letter stated that plaintiffs would consider whether to implead Cenex. In response, Cenex filed an interpleader, in which Smith prevailed. That was an orderly way in which to resolve plaintiffs' claim to reach those funds; therefore, it was not wrongful. *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 205, 582 P2d 1365

(1965). Accordingly, the court erred in submitting the claims for intentional interference and punitive damages to the jury.

Judgment for defendants on counterclaims and for attorney fees reversed; remanded to determine whether plaintiffs prevailed under lease and, if so, attorney fees to be awarded; otherwise affirmed.